Nicole CARLSON, an individual,
Plaintiff–Appellant,

v.

Charles B. REED, an individual and in his capacity as Chancellor of the California State University; Robert L. Caret, an individual and in his capacity as President of San Jose State University, Defendants–Appellees.

No. 99–56171.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 6, 2001

Filed May 8, 2001

W. Andrew Harrell, Edmonton, Alberta, Canada, for the appellant.

Karen L. Robinson (argued), Laura D. Knapp, Long Beach, California, for the appellees.

Before: D.W. NELSON, O'SCANNLAIN, and KLEINFELD, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether a state university may classify an alien temporary nonimmigrant visa holder student as a nonresident for tuition purposes.

I

Nicole Carlson, a Canadian citizen, entered the United States in 1996 under a "TD" nonimmigrant visa and has lived in California since that time. Under the terms of the North American Free Trade Agreement ("NAFTA"), a TD visa holder is authorized to enter the United States solely on a temporary basis; as a condition of entry, the visa holder must disclaim any intent to establish permanent residence in this country. 8 C.F.R. 214.6; 22 C.F.R. § 41.59. Despite such restriction on her visa, however, Carlson alleges that California is her one and only domicile. Carlson has periodically applied for, and received, annual extensions of her TD visa.

In 1997, Carlson applied for admission to San Jose State University ("SJSU"), part of the California State University ("CSU") system. She was advised by a SJSU representative that she would be classified as a nonresident, and hence could not attend SJSU on the tuition-free basis afforded California residents. Carlson appealed her nonresident classification to Linda MacAllister, University Counsel and Residence Specialist for the CSU system. MacAllister informed Carlson that she was not eligible for resident classification because her TD immigration status precluded her from establishing permanent residence in the United States. Carl-

son appealed MacAllister's determination to Chancellor Charles B. Reed, who rejected Carlson's appeal on the ground that she did not meet the residence requirements established by the California Education Code given her TD immigration status. Carlson alleges that, as a result of her nonresident classification, she was unable to enroll at CJSU because she could not afford the nonresident tuition rate.

In October 1998, Carlson instituted the present federal civil rights action under 42 U.S.C. § 1983, bringing suit against CSU Chancellor Reed and SJSU President Robert L. Caret in their official and individual capacities, seeking damages and injunctive relief for their alleged violation of her federal constitutional rights under the Supremacy Clause and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. In January 1999, Carlson sought a preliminary injunction. After a brief hearing, Judge Real denied Carlson's request, explaining that the "holder of a TN/TD visa does not have the legal capacity to possess the requisite intent to establish domicile and thus cannot be granted residency status in California." Chancellor Reed and President Caret thereupon filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), which Judge Real granted on June 1, 1999.[1] This timely appeal followed.

## II

■ We must first decide whether, under California state law, Carlson is eligible for classification as a California resident for state university tuition purposes.

Each student in the California State University system is classified as either a "resident" or "nonresident" for tuition purposes. Cal. Educ.Code § 68040. Only nonresident students are charged tuition. §§ 68050, 68052. To be deemed a resident for tuition purposes, a student must have resided in the state for at least one year. § 68017. Section 68062 sets forth the rules for determining residence. These rules include, in pertinent part, the following:

(a) There can only be one residence.

(b) A residence is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he or she returns in seasons of repose.

(c) A residence cannot be lost until another is gained.

(d) The residence can be changed only by the union of act and intent.

. . . .

(h) An alien, including an unmarried minor alien, may establish his or her residence, unless precluded by the Immigration and Nationality Act (8 U.S.C. 1101, et seq.) from establishing domicile in the United States.

Cal. Educ.Code § 68062.

The specific question before us, therefore, is the proper interpretation of section 68062(h), which provides that aliens are eligible for classification as California residents only if they possess the legal capacity to establish "domicile in the United States" under federal immigration law.

---

1. Carlson complains that the district court proceeded to rule on defendants' motion for judgment on the pleadings prematurely, as the defendants had not completed their responses to Carlson's interrogatories. This is frivolous. A party may move for a judgment on the pleadings at any point after the pleadings close. Fed.R.Civ.P. 12(c). Interrogatories are not pleadings. Fed.R.Civ.P. 7(a). Thus, a court may grant a 12(c) motion prior to close of discovery.

## A

According to Carlson, subsection (h) incorporates the INA definition of "residence" set forth at 8 C.F.R. § 316.5, which provides:

Unless otherwise specified, for purposes of this chapter ... an alien's residence is the same as that alien's domicile, or principal actual dwelling place, without regard to the alien's intent....

Carlson urges that this regulation equates domicile with simple physical residency, and, thus, simple physical residency is all that § 68062(h) requires, too.

We disagree with Carlson's interpretation of § 361.5. Clearly, the plain language of this regulation demonstrates that it defines "residence" rather than "domicile." Thus, we must look elsewhere to determine how federal immigration law may preclude establishment of "domicile" in the United States for purposes of California Education Code section 68062(h).

## B

Prior to 1983, California's Education Code provided:

A student who is an adult alien shall be entitled to resident classification if he has been lawfully admitted to the United States for permanent residence in accordance with all applicable laws of the United States; provided, that he has had residence in the state for more than one year after such admission prior to the residence determination date for the semester, quarter or term for which he proposes to attend an institution.

Cal. Educ.Code § 68076 (repealed, 1983 Cal. Stat. 680). In 1983, the California legislature repealed section 68076 and replaced it with current section 68062(h).

It is apparent that it did so in response to the Supreme Court's decision in *Toll v. Moreno*, 458 U.S. 1, 102 S.Ct. 2977, 73

L.Ed.2d 563 (1982). *See* Cal. Atty Gen. Op. No. 84–101 (1984) (reprinted as appendix in *Regents of the Univ. of Cal. v. Superior Court*, 225 Cal.App.3d 972, 981, 276 Cal.Rptr. 197, 202 (1990)). In *Toll*, the Court held that a similar Maryland provision that limited resident tuition status to United States citizens and immigrant aliens (i.e., aliens admitted to permanent residence) violated the Supremacy Clause, because the state thereby imposed additional burdens not contemplated by Congress on nonimmigrant aliens whose visa status permitted them to establish United States domicile. 458 U.S. at 3, 13–14, 102 S.Ct. 2977. The language of 68062(h) was drawn directly from *Toll*:

The Immigration and Nationality Act ... recognizes two basic classes of aliens, immigrant and nonimmigrant. With respect to the nonimmigrant class, the Act establishes various categories, the [plaintiffs'] G–4 category among them. *For many of these nonimmigrant categories, Congress has precluded the covered alien from establishing domicile in the United States.* But significantly, Congress has allowed G–4 aliens ... to enter the country on terms permitting the establishment of domicile in the United States.

*Id.* at 13–14, 102 S.Ct. 2977 (emphasis added) (internal citations omitted).

In a prior related case, *Elkins v. Moreno*, 435 U.S. 647, 98 S.Ct. 1338, 55 L.Ed.2d 614 (1978), the Supreme Court contrasted nonimmigrant classes such as the G–4 class with other nonimmigrant classes for whom "Congress expressly conditioned admission ... on an intent not to abandon a foreign residence or, by implication, on an intent not to seek domicile in the United States." *Id.* at 665, 98 S.Ct. 1338. The Court proceeded to observe that,

"[b]y including restrictions on intent in the definition of some nonimmigrant

classes, Congress must have meant aliens to be barred from these classes if their real purpose in coming to the United States was to immigrate permanently.... [I]t is also clear that Congress intended that, in the absence of an adjustment of status ..., nonimmigrants in restricted classes who sought to establish domicile would be deported."

*Id.* at 665–66, 98 S.Ct. 1338. The Court concluded, however, that Congress did not impose restrictions on intent for nonimmigrants in the G–4 class, and, thus, Congress was willing to allow such aliens to adopt the United States as their domicile. *Id.* at 666, 98 S.Ct. 1338. Accordingly, in order to determine if Carlson is precluded by section 68062(h) from establishing California residence for tuition purposes, we must determine whether Congress conditioned Carlson's admission into the United States "on an intent not to abandon a foreign residence" or otherwise "on an intent not to seek domicile in the United States." *Id.* at 665, 98 S.Ct. 1338.

## C

The "TN" visa category was created pursuant to Section D of Annex 1603 of NAFTA, which provides that "[e]ach party shall grant *temporary entry* and provide confirming documentation to a business person seeking to engage in a business activity at a professional level ... if the business person otherwise complies with existing immigration measures applicable to *temporary entry.*" North American Free Trade Agreement, 32 I.L.M. 605, 664 (1993) (emphasis added). The TD visa category is for dependents of TN visa holders. Carlson is a TD visa holder.[2]

As part of the NAFTA Implementation Act, Pub.L. 103–182, 107 Stat. 2057, Congress authorized the Attorney General to promulgate regulations governing the TN/TD visa category. *See* 8 U.S.C. § 1184(e). Pursuant to this authority, the Attorney General promulgated 8 C.F.R. § 214.6, which provides:

> Temporary entry, as defined in the NAFTA, means entry *without the intent to establish permanent residence.* The alien must satisfy the inspecting immigration officer that the proposed stay is temporary. A temporary period has a reasonable, finite end that does not equate to permanent residence. In order to establish that the alien's entry will be temporary, the alien must demonstrate to the satisfaction of the inspecting immigration officer that his or her work assignment in the United States will end at a predictable time and that he or she will depart upon completion of the assignment.

8 C.F.R. § 214.6(b) (emphasis added).

Accordingly, because admission into the United States for TN/TD nonimmigrant aliens is expressly conditioned on an intent not to establish permanent residence here, it is evident that Congress has "precluded [such aliens] from establishing domicile in the United States" under *Elkins* and *Toll.* Thus, Carlson cannot satisfy the residency requirement of 68062(h).

We further observe that, even if Carlson were to demonstrate sufficient indicia of a *subjective* intent to reside permanently in California, she would thereby violate her TN/TD federal immigration status. Her continued presence in this country would be illegal. *See Elkins,* 435 U.S. at 666, 98 S.Ct. 1338; 8 C.F.R. § 214.1. In *Regents of the Univ. of Cal.,* the California Court of Appeal construed section 68062(h) to provide that "undocumented aliens," that is, "noncitizens who lack valid visas, having

---

**2.** Because the conditions imposed on TN visas also apply to TD visas, the visa category is henceforth referred to as the "TN/TD" category.

entered or remained in the United States in violation of federal immigration law," cannot qualify for California resident status for state university tuition purposes. 225 Cal.App.3d at 977, 276 Cal.Rptr. at 200–201. Accordingly, even if Carlson could establish a subjective intent to remain permanently in California, she would still not be eligible for resident status at SJSU.

In conclusion, because Carlson lacks the legal capacity to establish domicile in the United States within the meaning of *Elkins* and *Toll,* she is not eligible for classification as a state resident under California Education Code section 68062(h).

## III

Next, we must consider whether Carlson's inability to establish state residence under California law violates her federal constitutional rights under the Supremacy, Due Process, and Equal Protection Clauses.

### A

■ In *Toll,* the Supreme Court held that Maryland violated the Supremacy Clause because it denied G–4 visa holders, who were not precluded by state law from establishing domicile in the state and were not precluded by federal immigration law from establishing domicile in the United States, the same right to resident tuition status that it provided to other state residents. The Court held that the state tuition policy constituted a "state regulation not congressionally sanctioned that discriminates against aliens lawfully admitted to the country ... [by] impos[ing] additional burdens not contemplated by Congress." *Toll,* 458 U.S. at 13, 102 S.Ct. 2977. The Court explained:

In light of Congress' explicit decision not to bar G–4 aliens from acquiring domicile, the State's decision to deny 'in-state' status to G–4 aliens, solely on account of the G–4 alien's federal immigration status, surely amounts to an ancillary 'burden not contemplated by Congress' in admitting these aliens to the United States.

*Id.* at 14, 102 S.Ct. 2977. In addition, the state policy frustrated the federal government's favorable tax privileges for G–4 aliens. *Id.* at 14–17, 102 S.Ct. 2977. For these reasons, the Court held that the state violated the Supremacy Clause. *Id.* at 17, 102 S.Ct. 2977.

Here, in contrast, Congress itself has precluded TD visa holders from establishing United States domicile. Thus, by denying TD visa holders the right to establish resident status for tuition purposes, California has hardly imposed on such aliens any "ancillary burden not contemplated by Congress." *Id.* at 14, 102 S.Ct. 2977. California's policy preventing such aliens from establishing permanent residence is the very burden contemplated by Congress in the establishment of TN/TD immigration status in the first instance. Accordingly, California Education Code section 68062 does not violate the Supremacy Clause.

### B

■ We next address Carlson's due process challenge. Under *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), as limited by *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), a state violates due process where it creates a university tuition rate scheme that purports to be concerned with residency, but then applies an irrebuttable presumption precluding those "seeking to meet its test of residency the opportunity to show factors clearly bearing on the issue." *Salfi,* 422 U.S. at 771, 95 S.Ct. 2457. Thus, in *Vlandis,* the Court held that Con-

necticut violated the Due Process Clause of the Fourteenth Amendment where it established special rates purportedly for state "residents," but had a policy whereby individuals who started their university career as non-residents were precluded from ever showing that they had meanwhile become state residents. *Vlandis*, 412 U.S. at 450, 93 S.Ct. 2230.

█ Carlson was given the opportunity to present proof that she meets the three requirements California "purports to be concerned with," namely, (1) physical residence; (2) intent to remain permanently in the state; and (3) legal capacity under federal immigration law to do so. Carlson simply failed to meet the third requirement. SJSU has not created an impermissible irrebuttable presumption. Thus, SJSU has not violated Carlson's due process rights under *Vlandis*.

## C

█ Finally, Carlson alleges that her equal protection rights were violated because California's tuition residency scheme discriminates against TD visa holders in favor of purportedly identically-situated R visa holders.

Carlson alleges that nonimmigrant aliens in the "R" class are eligible for resident status at CSU. Carlson claims that this violates her Fourteenth Amendment right to equal protection because R aliens and TN/TD aliens are similarly situated, insofar as both are classified as temporary nonimmigrants and, as such, neither can establish domicile in the United States. Thus, according to Carlson, CSU's policy to afford R aliens the opportunity to establish state residence unlawfully discriminates against TN/TD aliens.

An alien is eligible for nonimmigrant R status if the alien,

for the 2 years immediately preceding the time of application for admission, has been a member of a religious denomination having a bona fide nonprofit, religious organization in the United States; and (ii) seeks to enter the United States for a period not to exceed 5 years to perform the work described in subclause (I), (II), or (III) of paragraph 27(C)(ii).

8 U.S.C. § 1101(a)(15)(R). As discussed above, the Court in *Elkins* noted that, for many nonimmigrant classes, "Congress expressly conditioned admission ... on an intent not to abandon a foreign residence or, by implication, on an intent not to seek domicile in the United States." *Elkins*, 435 U.S. at 665, 98 S.Ct. 1338. Indeed, in 8 U.S.C. §§ 1101(a)(15)(B), (F), (H)(ii)(a), (J), (M), (O)(ii), (P), and (Q), Congress *explicitly* limited eligibility for nonimmigrant status to those aliens having "a foreign residence which the alien has no intention of abandoning." Notably, Congress imposed no such "restrictions on intent," *Elkins*, 435 U.S. at 665, 98 S.Ct. 1338, upon nonimmigrants in the R category. Applying the canon *expressio unius est exclusio alterius*, Congress's failure to expressly require R nonimmigrants to maintain a foreign residence must have been deliberate. Further, the Attorney General's regulations governing the admittance of nonimmigrants pursuant to § 1101(a)(15)(R) do not require, as a condition of entry, that the alien expressly disclaim an intent to establish permanent residence in the United States. *See* 8 C.F.R. 214.2(r)(3). In contrast, as discussed above, TN/TD aliens must specifically disclaim any intent to establish permanent residence in the United States as a condition of entry. 8 C.F.R. § 214.6(b).

We recognize that R visa holders are not eligible for indefinite extensions of their stay, as are TN/TD visa holders. *See* 8

C.F.R. 214.2(r)(7). R visa holders may not remain in the United States for a continuous period of time in excess of five years. *See id.* Such aliens are, however, permitted to return to the United States following a mandatory one-year absence. *See id.* Furthermore, a careful examination of 8 U.S.C. § 1101(a)(15)(R) and the Attorney General's regulations promulgated thereunder demonstrates that federal immigration law does not restrict an R nonimmigrant alien's *intent* to establish permanent residence in this country. The five-year limitation on the alien's stay does not preclude the alien from establishing domicile in the United States, given that domicile is traditionally defined as not only the place where one intends to remain, but also the place to which, whenever absent, one has the intention of returning. *See, e.g., Smith,* 288 P.2d at 499. Thus, notwithstanding the temporal restrictions of R visas, federal immigration status does not preclude R nonimmigrant aliens from establishing United States domicile under *Elkins* and *Toll.* As a result, an R alien is not barred from establishing California residence pursuant to § 68062(h) if the alien resides in California, intends to remain in California throughout her five-year stay, and intends to return to California following her mandatory one-year absence.

By denying TN/TD visa holders, but not R visa holders, the opportunity to establish California residence for tuition purposes, California has done no more than the federal government itself has done. The two visa categories are not similarly situated under federal immigration law; it is Congress, not the state, which has distinguished the two categories of nonimmigrant aliens. Thus, Carlson's equal protection claim fails.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed-

IV

For the foregoing reasons, the judgment of the district court is AFFIRMED.