John D. HENSALA, Plaintiff–
Appellant,

v.

DEPARTMENT OF THE AIR FORCE,
F. Whitten Peters, Secretary of the
Air Force, Defendants–Appellees.

No. 01–16791.

United States Court of Appeals,
Ninth Circuit.

Argued Oct. 9, 2002.

Submitted and Filed Sept. 12, 2003.

San Francisco, California; Stephen L. Collier, San Francisco, CA, Clyde J. Wadworth, Steefel, Levitt & Weiss, San Francisco, California for the appellant.

Anthony J. Steinmeyer and E. Roy Hawkens, United States Department of Justice, Appellate Civil Division, Washington, D.C., and Cpt. Andrew LeBlanc, United States Air Force, Washington, DC, for the appellees.

Before: TASHIMA, THOMAS, and PAEZ, Circuit Judges.

Opinon by Judge THOMAS; Opinion concurring in part and dissenting in part by Judge TASHIMA.

## OPINION

THOMAS, Circuit Judge.

In this appeal we consider, *inter alia*, whether the district court properly granted summary judgment on John D. Hensala's claims that the United States Air Force's educational recoupment policy violated his constitutional rights. We conclude that genuine issues of fact preclude summary judgment as to some of the claims, and remand the case to the district court for further proceedings.

### I

Since 1957, the Uniform Code of Military Justice has criminalized sex between service members of the same gender and provided that such conduct is an offense punishable by court martial. 10 U.S.C. § 925. In 1993, Congress enacted the so-called "Don't Ask, Don't Tell" policy, codified at 10 U.S.C. § 654(b), which limits the basis under which a service member will be ordered separated from the armed services for violations of § 925. In particular,

Richard DeNatale, Christopher F. Stoll, Edward E. Schiffer, Jo Ann Hoenniger, Heller Ehrman White & McAuliffe, LLP,

the "Don't Ask, Don't Tell" policy (1) enumerated five exceptions under which evidence of a § 925 violation will not lead to discharge, *see* § 654(b)(1); and (2) provided that if a service member "has stated that he or she is a homosexual or bisexual, or words to that effect," a presumption arises that the member violated § 925, but the presumption can be rebutted by evidence of celibacy. *See* 10 U.S.C. § 654(b)(2).

This general policy has been incorporated into the administration of the Armed Forces Health Professional Scholarship Program ("the Scholarship Program"), a national program that provides an individual with financial assistance for expenses arising from his medical education in exchange for an enforceable commitment to serve on active duty as a physician for a specified period of time. Pursuant to 10 U.S.C. § 2005, the Secretaries of each branch of the military may require a scholarship contract to provide "that if such person, voluntarily or because of misconduct, fails to complete the period of active duty specified in the agreement ... such person will reimburse the United States" proportionately to the unserved duty. 10 U.S.C. § 2005.

On May 17, 1994, Deputy Secretary of Defense John M. Deutch issued a memorandum ("the Deutch Memo") interpreting 10 U.S.C. § 2005 in light of the "Don't Ask, Don't Tell" policy. As relevant here, the Deutch Memo provided that although a service member's statement of sexual orientation, sometimes referred to as a "coming out statement," when not offset by evidence of celibacy, is sufficient for grounds of separation from the armed forces, such a statement is insufficient to constitute a basis for recoupment. The Deutch Memo indicated that recoupment would be appropriate "where, based on the circumstances, it is determined that the member made the statement for the pur-

pose of seeking separation." The parties concede that, for the purposes of the instant case, the Deutch Memo reflects the operative recoupment policy of the United States Air Force.

Hensala is a physician and former Air Force Reserve captain. Prior to his entry into medical school, Hensala applied for and became a recipient of the Scholarship Program. After executing a contract implementing the terms of the Scholarship Program, Hensala began pursuing his medical education at Northwestern University Medical School.

The contract at issue contained a provision that Hensala would reimburse any money expended on his behalf in the event that he fails to complete the period of active duty due to voluntary separation for any reason or involuntary separation for specified reasons. In particular, the contract provided that:

> If I fail to complete the period of the active duty required by this agreement because of voluntary separation for any reason (e.g., conscientious objector, pregnancy, etc.) or involuntary separation because of substandard duty performance, misconduct (e.g. homosexuality), moral or professional dereliction, or because retention is not clearly consistent with the interest of national security, I will reimburse the United States in one lump sum for the total cost of advanced education.

In 1990, Hensala graduated from Northwestern University Medical School, and pursuant to the terms of the contract, was appointed Captain of the Air Force Reserve, Medical Corps. Hensala requested and received two deferments of active duty for the purpose of completing a three-year psychiatric residency and a two-year fellowship in child psychiatry.

In 1994, the Air Force notified Hensala that his active duty would commence in

1995 and requested the completion of a physical examination, a prerequisite to his appointment to active duty. On December 12, 1994, Hensala sent a letter to Colonel Daniel Degracias of the Air Force Directorate of Medical Service Officer Management informing the Colonel that "I am gay" and that "I do not believe this will affect my ability to serve in the Air Force as a child psychiatrist. . . ." The Air Force did not send a direct response to Hensala at this time.

Hensala completed his physical examination in January 1995. In April, he was ordered to commence active duty at Scott Air Force Base, located in Kansas, on June 26, 1995.

In approximately April or May 1995, Hensala called his supervisor and commanding officer, Lieutenant Colonel Jay Weiss, and informed him that he was gay and intended to live with his partner when stationed at Scott Air Force Base. According to Hensala, Lt. Colonel Weiss responded that such an arrangement was acceptable as long as Hensala neither brought his partner to the housing office nor publicized their relationship.

Also in the spring of 1995, Major Albert Klein contacted Hensala and informed him that he had been appointed to serve as Hensala's counsel in the investigation of Hensala's statements regarding his sexual orientation. Major Klein allegedly advised Hensala to provide a list of references who could confirm his sexual orientation. Hensala complied by providing a list of organizations and individuals. Major Klein forwarded this list to Colonel Rockne Buraglio, a reserve judge advocate. In June 1995, the Air Force suspended Hensala's orders to report to active duty.

In August 1995, the Air Force appointed Colonel Buraglio as the investigating officer over the matter. Colonel Buraglio conducted a recorded interview with Hensala who was represented by counsel. At this interview, Hensala explained that in 1988, he realized he was gay, and at that time, he informed only a small number of close friends of his sexual orientation. Over time, he became more comfortable with his sexual orientation, and in 1994, he realized he could no longer conceal his sexual orientation from co-workers and supervisors. Hensala contended he was motivated to inform the Air Force of his sexual orientation because of his growing comfort with it and his increased discomfort with keeping his orientation a secret.

Hensala also asserted that at the time he contacted Colonel Degracias, he was not aware of the recoupment policy, and that his attorney and media were the sources of his understanding of the armed forces' "Don't Ask, Don't Tell" policy. At the close of the interview, Hensala reaffirmed his desire to serve on active duty.

In January 1997, Colonel Buraglio sent a letter to the Air Reserve Personnel Center reporting his findings from the investigation, which included a conclusion that Hensala informed the Air Force of his sexual orientation for the purpose of avoiding active duty. Colonel Buraglio thus recommended that the Air Force discharge Hensala and seek recoupment pursuant to the operative regulations.

In February 1997, the Air Force informed Hensala of its intention to discharge him and seek recoupment because he had "made a personal statement regarding a propensity for homosexual conduct for the purpose of obtaining separation." On May 15, 1997, Hensala informed the Air Force of his decision not to tender his resignation and waived an opportunity to contest the Air Force's recommendation for discharge at an administrative proceeding on the basis that such a hearing would be futile.

On June 30, 1997, the Air Force Reserve Personnel Center forwarded the Hensala case to the Air Force Personnel Council with a recommendation of discharge and recoupment. On October 21, 1997, the Personnel Council voted unanimously to follow such recommendation. On November 5, 1997, the Secretary of the Air Force discharged Hensala pursuant to 10 U.S.C. § 654 and ordered recoupment in the amount of $71,429.53 pursuant to 10 U.S.C. § 2005.

On August 14, 1998, Hensala petitioned the Air Force Board for Correction of Military Records ("Corrections Board") to rescind the recoupment order, but did not challenge the underlying discharge. On April 11, 2000, the Corrections Board issued a written opinion denying the petition.

Hensala filed an action with the district court, alleging that the recoupment order violated (1) the Administrative Procedure Act, 5 U.S.C. §§ 701–06, ("APA"); (2) procedural due process under the Fifth Amendment; (3) equal protection under the Fourteenth Amendment; and (4) his First Amendment right to freedom of speech. In response to court-ordered discovery, the Air Force provided a list of all of the 322 medical doctors and students separated from the Air Force between the time that the Deutch Memo was written and the time this action was commenced. The list provides the reason for each service member's discharge, whether recoupment was sought, and whether the Secretary of the Air Force found the separation voluntary. As relevant here, of the situations in which a service member made a statement of sexual orientation, the Air Force ordered recoupment in 23 out of the 28 cases. In the 277 separation cases that did not involve a coming out statement, recoupment was ordered 274 times.

On May 21, 2001, the district court reviewed the record in its entirety and granted the Air Force's motion for summary judgment with respect to all four claims and denied Hensala's request for further discovery on the APA and due process claims. Hensala timely appealed. We ordered the submission of this case deferred pending the United States Supreme Court's decision in *Lawrence v. Texas*, —— U.S. ——, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003).

We review a district court's order granting summary judgment *de novo. See Oliver v. Keller*, 289 F.3d 623, 626 (9th Cir. 2002). We must determine whether, when viewing the evidence in the light most favorable toward the nonmoving party, there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law. *Id.* at 626. We may not weigh evidence or determine the truth of the matter, but rather, we limit our inquiry into whether genuine issues exist for trial. *See Balint v. Carson City*, 180 F.3d 1047, 1050 (9th Cir.1999) ·(en banc). We have jurisdiction to consider this appeal pursuant to 28 U.S.C. § 1291.

## II

### A

Hensala alleges that the district court erred in granting summary judgment with respect to his APA claim in light of the fact that Hensala made a clear statement of intent to serve on active duty.

■ Under the APA, a federal court may set aside an agency decision only if it is demonstrated to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Ariz. Cattle Growers' Ass'n v. United States Fish & Wildlife*, 273 F.3d 1229, 1236 (9th Cir.2001). If the evidence contained in the administrative record is susceptible to more than one

rational interpretation, a reviewing court may not substitute its judgment for that of the agency. *See Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir.2001); *Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir.1998).

■ Here, the district court did not err in concluding that substantial evidence supports both the Secretary's initial decision to seek recoupment and the Corrections Board's affirmance. Colonel Buraglio undertook an extensive investigation, conducted an interview, made a credibility determination, and prepared a report with his written findings. Both Colonel Buraglio and the Corrections Board relied upon these findings in concluding that Hensala informed the Air Force of his sexual orientation for the purpose of separating. Despite the existence of other reasonable interpretations of the evidence, Colonel Buraglio's conclusion is supported by inferences drawn from the timing of Hensala's disclosure and Colonel Buraglio's credibility determination. Further, Colonel Buraglio and the Corrections Board's conclusions appear to fit squarely in the language of the Deutch Memo. Because a federal court may not substitute its judgment under these circumstances, the district court properly rejected Hensala's contention that the decision lacked an adequate factual foundation. *See Edlund,* 253 F.3d at 1158 (affirming an ALJ's resolution of competing testimony in light of its provision of specific and legitimate reasons for its decision).

Hensala also advances two legal claims against the Air Force's decision. First, Hensala argues that because the Deutch Memo provides "that the member made the statement for the purpose of seeking separation," recoupment is proper only if a statement of sexual orientation is made with knowledge that the statement will result in separation. Hensala argues that because Colonel Buraglio did not make

findings involving Hensala's knowledge on this matter, his recommendation is incomplete, contrary to Hensala's clear statement of intent to serve, and thus insufficient to meet the Deutch Memo standard. However, as the district court correctly noted, there is nothing in 10 U.S.C. § 2005 or the Deutch Memo that limits a finding of "purpose" to a finding of specific awareness regarding the consequences as coming out as advanced by Hensala. Thus, the district court did not err in granting summary judgment on this matter.

Second, after *Lawrence* was decided, Hensala alleges that the recoupment policy violates the APA because 10 U.S.C. § 2005 is "contrary to [a] constitutional right" pursuant to 5 U.S.C. § 706(2)(B). Hensala first raised this argument after *Lawrence v. Texas,* — U.S. ——, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), was decided. Because the claim has not been presented to the district court, we decline to address it on appeal. *Balser v. Dep't of Justice,* 327 F.3d 903, 908 (9th Cir.2003). We do not, of course, preclude the parties from pursuing this claim on remand.

B

■ Hensala contends that the Air Force violated due process by presuming that any statement declaring his sexual orientation constitutes an irrebuttable finding of a service member's intent to separate. Hensala alleges that despite a written policy providing for individualized findings, the Air Force applies its recoupment policy to all service members who make coming out statements. Hensala contends that the district court erroneously granted summary judgment on this claim and abused its discretion in denying his related discovery request because material issues of fact exist and, when viewed most favorably toward Hensala, a reason-

able fact-finder could resolve them in his favor.

The recoupment policy on its face provides for an individualized investigation and hearing, and does not deny a service member an opportunity to present evidence as to the question of intent to separate. *Cf. Vlandis v. Kline,* 412 U.S. 441, 447, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (striking down policy that denied out-of-state applicants an opportunity to prove whether they were residents of Connecticut). Further, as applied to Hensala, the record demonstrates that the Air Force provided an investigation and hearing in which Hensala presented evidence that he did not come out for the purpose of separating from the Air Force.

As applied to other service members, the record demonstrates that in an approximate six year window, the Air Force ordered recoupment in 23 of the 28 cases that involved a service member who announced his or her sexual orientation. The district court analyzed the findings of these cases, as characterized by each of the parties, and concluded that the Air Force made individualized determinations with respect to each service member's intent to separate.

Even viewing the evidence in the light most favorable toward Hensala, the record demonstrates that the Air Force orders recoupment after individualized determinations of intent and does not, in policy or in practice, circumvent the investigation by applying an irrebuttable presumption. Any further evidence relating to situations in which recoupment was ordered does not undercut the demonstrated individualized practices employed by the Air Force. Accordingly, the district court neither erred in granting summary judgment on this claim nor abused its discretion in denying further discovery or denying Hensala's Rule 56(f) motion relating to the Air Forces' practices towards other service members who make coming out statements. *See Carlson v. Reed,* 249 F.3d 876, 882 (9th Cir.2001) (holding that a university's presumption that certain immigrants are nonresidents did not violate due process because individuals subject to the policy had an opportunity to present proof of residency); *Chance v. Pac–Tel Teletrac, Inc.,* 242 F.3d 1151, 1161 n. 6 (9th Cir. 2001) (holding that a district court abuses its discretion in denying a Rule 56(f) motion if movant can demonstrate that additional discovery would have precluded summary judgment).

**C**

■ Hensala alleges that the Air Force violated his rights to equal protection and free speech because his status as a gay man, rather than any misconduct, triggered the recoupment policy. The district court rejected this argument, holding that *Holmes v. California Army National Guard,* 124 F.3d 1126 (9th Cir.1997) foreclosed consideration of these claims.

*Holmes* involved two service members' constitutional challenges to 10 U.S.C. § 654(b), the "Don't Ask, Don't Tell policy." 124 F.3d at 1127. *Holmes* held that the statute did not violate equal protection because the military had a legitimate interest "in discharging service members on account of homosexual conduct. . . . ." *Id.* at 1134. We further concluded in *Holmes* that the policy was rationally related to its goal because its statutory presumption that a coming out statement indicates that the service member will not be celibate is a rebuttable presumption and that such presumption applies to "persons of homosexual and heterosexual orientation." *Id.* at 1136. *Holmes* also held that § 654(b) did not implicate the First Amendment because the service members' coming out statements were evidence of misconduct, and the service members "were discharged

for their conduct and not for speech." *Id.* at 1136. Thus, the statute was upheld as not violating equal protection or free speech because it targeted criminalized conduct and was applicable against both gay and non-gay service members.

Here, Hensala alleges that the recoupment policy targets status because a statement identifying sexual orientation is sufficient to trigger the policy. Indeed, the "Don't Ask, Don't Tell" policy requires an investigation into whether a service member has had sex with someone of the same gender, *see* § 654(b)(1). If the service member makes a coming out statement, an inquiry is required as to whether the service member can rebut with evidence of celibacy a presumption that he or she will violate § 925. *See* § 654(b)(2). In contrast, in the recoupment context, the Deutch Memo expressly provides that not all service members who are separated pursuant to § 654(b)(1), are candidates for recoupment. The Deutch Memo enumerates the basis under which a coming out statement will trigger an investigation:

> Thus, for instance, a member's statement that he or she is a homosexual, though grounds for separation under the current policy if it demonstrates a propensity or intent to engage in homosexual acts, does not constitute a basis for recoupment, as defined above. This does not preclude recoupment, however, if the member making such a statement has otherwise failed to complete his or her term of service "voluntarily or because of misconduct." In particular, recoupment would be appropriate where, based on the circumstances, it is determined that the member made the statement for the purpose of seeking separation.

The Deutch Memo does not account for the fact that the "Don't Ask, Don't Tell" policy also is applied against heterosexual service members who violate § 925. If it

is demonstrated that the recoupment policy only targets individuals who identify themselves as gay, the recoupment policy is treating similarly-situated individuals, those who violate § 925 and are discharged based on § 654(b)(1), differently based on their sexual orientation status alone. Unlike the "Don't Ask, Don't Tell" policy that applies against service members of all sexual orientations who engage in sexual acts with someone of the same gender, *see* § 654(b)(1), the record demonstrates that there are genuine issues of material fact as to whether the recoupment policy applies exclusively to service members who are gay and not simply to all service members who violate § 925.

Moreover, unlike the "Don't Ask, Don't Tell" policy, there is no presumption under the recoupment policy, that a coming out statement presents a rebuttable presumption that the service member has violated § 925. The statement thus is not admissible evidence of conduct, but rather, presents a genuine issue of material fact that the armed forces impermissibly is directing its policies against a service member based on his sexual orientation. If it is demonstrated that the armed forces is discriminating based on status, Hensala's equal protection and first amendment claims present genuine issues that need to be resolved at trial. *See, e.g., Limon v. Kansas,* —— U.S. ——, 123 S.Ct. 2638, 156 L.Ed.2d 652 (2003) (vacating and remanding equal protection challenge brought by gay man claiming criminal statute provided unequal treatment on the basis of sexual orientation "to the Court of Appeals of Kansas for further consideration in light of *Lawrence v. Texas* ").

Because *Holmes* limits its inquiry into the armed forces' separation policy that is predicated on a finding of impermissible conduct, *Holmes* does not foreclose a claim that the separate recoupment policy ap-

plies only to service members based on their status. *See, e.g., Watson v. United States,* 49 Fed. Cl. 728, 731–32 (2001) (holding that the legal analysis set forth in *Holmes* does not foreclose a challenge to the armed forces' separation pay policy as applied to a discharged service member). The district court erred thus as a matter of law. We need not, and do not, reach the question of whether *Lawrence v. Texas,* — U.S. ——, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) has effectively overruled *Holmes.*

### III

We affirm the district court's grant of summary judgment on Hensala's APA, Due Process, and Rule 56(f) claims. We reverse the district court's grant of summary judgment on his Equal Protection and First Amendment claims and remand for further proceedings.

Each party to bear its own costs.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**

TASHIMA, Circuit Judge, concurring in part and dissenting in part:

John Hensala received a free medical education at taxpayer expense to the tune of $71,429.53. In return, he promised to serve as a physician in the United States Air Force for four years. Quite simply, Hensala refused to perform his part of the bargain—he reneged on his promise. Because I can see no legal reason why Hensala should not be held to his bargain and required to repay the government for his medical education, I dissent from so much of the majority opinion as remands this case for further proceedings.

I concur in Parts II.A and II.B of the majority opinion, affirming the district court's grant of summary judgment in favor of the Air Force on Hensala's APA, due process and Fed.R.Civ.P. 56(f) claims, but I respectfully dissent from Part II.C, which remands Hensala's equal protection claim for further proceedings. I would affirm the district court on all issues because Hensala does not challenge his separation as voluntary under the Don't Ask, Don't Tell ("DADT") policy, which we upheld in *Holmes v. California Army Nat'l Guard,* 124 F.3d 1126, 1133 (9th Cir.1997),[1] and it follows from his voluntary separation that recoupment of professional educational costs under the Deutch memorandum is proper and does not implicate any equal protection concerns.

Hensala entered into a straightforward agreement with the military to complete a period of active duty in exchange for his medical education. His contract provided that "[i]f I fail to complete the period of active duty required by this agreement because of voluntary separation for any reason … I will reimburse the United States in one lump sum for the total cost of advanced education." Nonetheless, after completing his medical education at government expense and obtaining two deferrals of the required service, he reported his homosexual orientation to the military in violation of the DADT policy a mere two weeks after he was ordered to report for active duty.

Hensala not only wrote a letter to Colonel Degracias of the Air Force Directorate

---

1. Although the majority invites Hensala to pursue his newly-raised claim under *Lawrence v. Texas,* — U.S. ——, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), on remand, after supplemental briefing on the issue, I conclude that *Lawrence* does not impliedly overrule *Holmes. Holmes* was based on the special needs of the military, *see* 124 F.3d at 1134–36, a subject that *Lawrence* does not address. Thus, the two cases are not "closely on point," *United States v. Gay,* 967 F.2d 322, 327 (9th Cir. 1992), and *Holmes* remains the law of the circuit.

of Medical Service Officer Management, he also called his future commanding officer requesting to bring his same-sex domestic partner to Scott Air Force Base when he reported for duty. Finally, he submitted a letter to his appointed counsel, Major Klein, with a list of contacts who could verify his gay sexual orientation. His counsel, in turn, forwarded the letter to Colonel Buraglio, the Judge Advocate appointed to conduct an inquiry into whether Hensala's statements warranted discharge and recoupment.

At the time Hensala took these actions, the military had a policy that a member who states that he is a homosexual "shall be separated" unless the member is not a person who engages in or intends to engage in homosexual conduct. 10 U.S.C. § 654(b)(2). Because Hensala declined the opportunity to demonstrate that he did not engage in homosexual conduct and reinforced the presumption that he intended to engage in such conduct by requesting to bring his male romantic partner to Scott AFB, the unrebutted presumption properly carried the day under the DADT policy. As the majority concedes, Hensala does not challenge his discharge under DADT, but challenges only the recoupment order.

The majority errs in conflating what should be separate analyses under the DADT policy and under the Deutch Memo's recoupment policy into a single analysis. Recoupment under the Deutch Memo comes into play only after a service member has been discharged, i.e., has voluntarily rendered himself unable "to complete his or her term of service. ..." The Deutch Memo is equally clear that it does *not* punish status. "[A] member's statement that he or she is a homosexual, though grounds for separation under the current policy if it demonstrates a propensity or intent to engage in homosexual acts, *does not constitute* a basis for recoupment...." (Emphasis added.) Because, in Hensala's case, discharge under DADT was a necessary prerequisite to invoking recoupment under the Deutch Memo, there is no basis in the record for the majority's speculation that a factual issue exists as to whether "the recoupment policy only targets individuals who identify themselves as gay," opening up the possibility that "the recoupment policy is treating similarly-situated individuals, those who violate § 925 and are discharged based on § 654(b)(1), differently based on their sexual orientation status alone." The court-ordered discovery, referred to by the majority, demonstrates that the recoupment policy is administered in an even-handed, case-by-case fashion without any hint of discrimination based on sexual orientation. The record belies the majority's assertion that "the record demonstrates that there are genuine issues of material fact as to whether the recoupment policy applies exclusively to service members who are gay." Significantly, the majority points to nothing in the record to support this assertion. In fact, Hensala adduced no evidence in opposition to the Air Force's summary judgment motion to support his equal protection claim.

Moreover, even if such a hypothetical possibility existed, this is not the case in which to pursue it. As noted, Hensala was given the opportunity to contest his discharge under DADT—to contest the presumption, but he declined to do so. He does not contest his discharge here. As the majority also concedes, the Judge Advocate's finding, and the Air Force Board for the Correction of Military Records' affirmance of the same, that Hensala's disclosure of his homosexual orientation at the time he was ordered to active duty was made for the purpose of avoiding military service is supported by substantial evidence.

Given the circumstances under which Hensala disclosed his homosexual orienta-

tion to the Air Force, the fact that he does not contest his discharge under DADT, and the Air Force's finding that Hensala made his sexual orientation statements to various members of the Air Force, including his commanding officer, for the purpose of procuring a separation from service, the district court did not err in affirming the Air Force's decision ordering recoupment of the cost of Hensala's medical education. Contrary to the majority's speculation, the Deutch memo is not aimed at status; it is aimed at conduct—the procuring of a voluntary discharge so as to render the recipient of government educational funds unable to fulfill his commitment to perform military service for the required period.

Because the majority does not hold Hensala to his part of the bargain without any legal excuse for not doing so, I respectfully dissent from Part II.C of the majority opinion.