

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-3-2006

# Elgergawi v. Secretary Homeland

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2325

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Elgergawi v. Secretary Homeland" (2006). *2006 Decisions*. Paper 1482.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1482

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 05-2325

———

MOHAMMAD ELGERGAWI,
                                    Appellant
                    v.

SECRETARY OF DEPARTMENT OF HOMELAND SECURITY;
DIRECTOR OF UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES;
PENNSYLVANIA DISTRICT DIRECTOR OF THE
UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES;
INTERIM OFFICER IN CHARGE OF PITTSBURGH'S SUB-OFFICE
OF US CITIZENSHIP AND IMMIGRATION SERVICES

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 03-cv-01993)
District Judge: Honorable Donetta W. Ambrose

———

Submitted Under Third Circuit LAR 34.1(a)
February 28, 2006

Before: SLOVITER, FUENTES, Circuit Judges, and BRODY,* District Judge

(Filed March 3, 2006)

OPINION

———

————————

* Hon. Anita B. Brody, United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

SLOVITER, Circuit Judge.

Appellant, Mohammad Elgergawi ("Elgergawi"), appeals from the order of the District Court granting summary judgment to the defendant immigration officials ("Government") denying Elgergawi's complaint for a declaratory judgment to establish his eligibility for naturalization in the United States.

## I.

### FACTS AND PROCEDURAL HISTORY

Elgergawi is a native of Egypt born to a Palestinian father and Egyptian mother. He could not secure Egyptian citizenship at birth due to his father's nationality. Elgergawi spent his formative years in both Egypt and in Saudi Arabia, where his father occasionally had work contracts. Elgergawi received an undergraduate degree from Beirut Arab University in Alexandria, Egypt. In August 1992, following his graduation, Elgergawi came to the United States on an F-1 student visa to pursue a master's degree and enrolled in New Hampshire College but did not attend due to financial constraints. Elgergawi moved to Orlando, Florida, to live with a cousin. After two weeks in Orlando, Elgergawi relocated to Pittsburgh, Pennsylvania, where he lived with a friend he knew from Egypt. In September 1992, Elgergawi applied for asylum in the United States based on abuse suffered as a Palestinian living in Egypt. For unknown reasons, his asylum application was never adjudicated.

In February of 1995, Elgergawi married Vivienne Mallon, an Irish citizen and

legal permanent resident of the United States. When his wife became a citizen of the United States, Elgergawi applied for and was granted status as a legal permanent resident.[1] In March 1996, Elgergawi and his wife moved to Orlando, Florida, where he worked in the fields of banking, finance, and software development while attending the University of Central Florida. In October 2001, Elgergawi pursued a job as a software consultant at Zayed University in Dubai, one of the United Arab Emirates. Elgergawi officially began working at Zayed University in January 2002. In March 2002, after settling their two children in University provided housing in Dubai, Elgergawi and his wife returned briefly to the United States where they signed a one-year lease for a small apartment in Pittsburgh. The family did not furnish the apartment or keep any personal effects there.

In October 2002, while visiting Pittsburgh from Dubai, Elgergawi filed for naturalization with United States Citizenship and Immigration Services ("CIS"). In February 2003, Elgergawi returned to the United States to attend a naturalization interview. The officer who interviewed Elgergawi determined that his case raised national security concerns and required further investigation by the Joint Terrorism Task Force. After waiting nearly ten months for approval of his naturalization application, Elgergawi filed this suit in December 2003, requesting a hearing on his application

---

[1] Elgergawi acquired Irish citizenship in 1998 by virtue of his marriage. His wife remains a citizen of both Ireland and the United States.

3

pursuant to 8 U.S.C. § 1447(b), which permits a district court to rule on an application for naturalization where more than 120 days have passed from the date on which the examination was conducted and in which no decision has been rendered.[2]

Following discovery, the parties filed cross motions for summary judgment on the issue of whether Elgergawi was entitled to be naturalized, with both sides focusing on whether Elgergawi had satisfied the applicable residence requirements set forth in the controlling statute and its implementing regulations. On April 1, 2005, the District Court granted the Government's motion for summary judgment, holding that Elgergawi failed to prove that he had resided in Pittsburgh for three months preceding his application for naturalization, as required.

## II.

Elgergawi claims that the District Court erred in two ways in granting the Government's motion for summary judgment: 1) the court improperly interpreted 8 U.S.C. § 1430(a)[3] as imposing a substantive requirement of three months of residence in a

---

[2] The District Court denied the Government's motion to dismiss on the ground that CIS lost its jurisdiction over the claim once Elgergawi sought relief in federal court. That ruling is not at issue here.

[3] In his brief to this court, Elgergawi focuses on 8 U.S.C. § 1427(a) and argues that the District Court improperly interpreted the three-month residency requirement in that section. The applicable section is 8 U.S.C. § 1430(a), which includes the same three-month residency requirement and applies to any person whose spouse is a citizen of the United States. We have therefore cited to the latter section.

state or district preceding an application for naturalization, rather than as a special venue provision; and 2) the court adopted an improper definition of what constitutes "residence" under that statute.

**A. Substantiality of the Three-Month Residency Requirement**

Under 8 U.S.C. § 1430(a), "[a]ny person whose spouse is a citizen of the United States . . . may be naturalized . . . if such person . . . has resided within the State or the district of the Service in the United States in which the applicant filed his application for at least three months[.]" The regulation interpreting this provision provides in relevant part that:

> (a) General. Except as otherwise provided in this chapter, to be eligible for naturalization, an alien must establish that he or she:
> . . .
>
> (5) Immediately preceding the filing of an application . . . has resided, as defined under § 316.5, for at least three months in a State or Service district having jurisdiction over the applicant's actual place of residence, and in which the alien seeks to file the application[.]

8 C.F.R. § 316.2(a)(5).

Elgergawi argues that the residency requirements set out in both the statute, 8 U.S.C. § 1430(a), and the regulations are designed only to determine the proper venue for administrative consideration of naturalization applications. Elgergawi relies on a statement published in the Federal Register that accompanied the passage of the regulations found in 8 C.F.R. § 316. Because the statement mentions the potential impact

5

of the regulation's jurisdictional residence prerequisite on the filing of an application for naturalization, Elgergawi contends that the relevant regulation governs only venue, not substantive requirements for becoming a citizen. Further, Elgergawi contends that the Government waived any objection to venue by failing to raise the issue in a timely or sufficient manner.

We conclude that Elgergawi's arguments lack merit. Both the statute, 8 U.S.C. § 1430(a), and the regulation, 8 C.F.R. § 316.2, set forth requirements that an applicant must meet *to be eligible* for naturalization. Further, the Immigration and Nationality Act ("INA") contains a special venue provision which applies when a party desires review involving a petition for naturalization. See 8 U.S.C. § 1447. Because § 1447 governs venue, it is unlikely that Congress intended § 1430 to also serve as a special venue provision. In making his argument, Elgergawi fails to cite a single case that supports his contention that either the statute or the regulation at issue should be read as a special venue provision. Finally, the statement made in the Federal Register and cited by Elgergawi supports the District Court's holding that the regulation provides substantive requirements for filing an application for naturalization. See 8 C.F.R. § 316 (stating that the new regulations found in part 316 "serve as a clear and concise explanation of the substantive requirements upon which the INS will base its naturalization determinations").

**B. Residence - 8 C.F.R. § 316.5(a)**

6

Having concluded that Elgergawi was required to "reside" in the state in which he filed his application for the three months preceding the filing, we must next decide whether the District Court properly interpreted the definition of "residence" found in 8 C.F.R. § 316.5(a). The relevant portion of the regulation provides that "an alien's residence is the same as that alien's <u>domicile, or principal actual dwelling place, without regard to the alien's intent</u> . . . ." 8 C.F.R. § 316.5(a) (emphasis added).

The District Court held, and the Government argues, that the phrase "or principal actual dwelling place" relates to and describes the word "domicile." Govt. Br. 20. Thus, the term "residence" is defined as an "alien's domicile . . . without regard to intent[,]" and the term "domicile" is further clarified by the phrase "principal actual dwelling place." The Government argues that, because the phrase "or principal actual dwelling place" is set off by commas, it should be read as an apposition. An apposition is a phrase "plac[ed] . . . beside [a word or phrase] so that the second explains and has the same grammatical construction as the first." <u>Id.</u> (citing <u>Webster's New World Dictionary</u> 35 (2d Concise Ed. 1982)). The Government contends that such a reading of the statute best accounts for the statute's full text, punctuation, and structure because, if this provision were to be construed in the disjunctive, there would have been no need to use commas to set off the phrase.

The Government also notes that the District Court's interpretation of the regulation comports with the definition of residence contained in the INA. The INA defines the term

7

"residence" as "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33). The Government continues, if this court were to allow a more expansive reading of the regulatory definition of the term "residence" to include a separate definition of the term "domicile," the regulation would impermissibly expand the scope of the statute under which it was promulgated. Finally, the Government, citing <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842-44 (1984), argues that the agency's reasonable interpretation of its own regulations should be entitled to deference.

Elgergawi argues that the phrases "alien's domicile," and "or principal actual dwelling place, without regard to the alien's intent" should be read disjunctively. Appellant's Br. 18-22. Thus, according to Elgergawi, an alien should be able to establish residence in one of two ways, either by establishing through some physical presence in a place coupled with an intention to remain in that place a domicile in the state in which the application was filed (citing <u>Mississippi Band of Choctaw Indians v. Holyfield</u>, 490 U.S. 30, 48 (1989)), or by showing that his residence was his principal actual dwelling in the state in which the application was filed.

Elgergawi concedes that he was not physically present in Pennsylvania during the relevant time period and that his principal actual dwelling place was in Dubai. Thus, he argues that he is eligible for naturalization because he was "domiciled" in Pennsylvania,

8

that is, he paid rent in Pennsylvania and had an intention to return there. Elgergawi supports his argument for a disjunctive reading of § 316.5(a) by pointing to the inclusion of the word "or" in the text of the regulation and by arguing that an alternative reading would render the phrase "or principal actual dwelling place" superfluous.

The District Court's construction of § 316.5(a) better comports with the plain language of the regulation and with the definition of residence in the INA. The insertion of commas to offset the phrase "or principal actual dwelling place" can only be explained if this phrase were read in apposition to the term "domicile." Rather than making that phrase superfluous, the agency may have used the phrase to clarify the term "domicile" and to bring the definition of "residence" in line with the definition at 8 U.S.C. § 1101(a)(33). Cf. Carlson v. Reed, 249 F.3d 876, 879 (9th Cir. 2001) ("Clearly, the plain language of [§ 316.5(a)] demonstrates that it defines 'residence' rather than 'domicile.'"). Finally, Elgergawi's reading of the provision ignores the fact that the phrase "without regard to the alien's intent" clearly applies to the term "domicile." Elgergawi admits that the traditional definition of the term domicile includes some physical presence in a place coupled with an intention to remain in that place. Because § 316.5(a) eliminates consideration of the alien's intent, Elgergawi would not be able to show that he had established a domicile in Pennsylvania even if we were to read that provision in the disjunctive.

**C. Applicability of 8 C.F.R. § 316.5(b)(5)**

9

Finally, Elgergawi argues that, even if § 316.5(a) requires him to have established a principal actual dwelling place in Pennsylvania, he meets the exception to this requirement under § 316.5(b)(5). This regulation provides:

> (5) Residence during absences of less than one year.
> (I) An applicant's residence during any absence of less than one year shall continue to be the State or Service district where the applicant last resided at the time of the applicant's departure abroad.
>
> (ii) Return to the United States. If, upon returning to the United States, an applicant returns to the State or Service district where the applicant last resided, the applicant will have complied with the continuous residence requirement specified in § 316.2(a)(5) when at least three months have elapsed, including any part of the applicant's absence, from the date on which the applicant first established that residence. If the applicant establishes residence in a State or Service district other than the one in which he or she last resided, the applicant must complete three months at that new residence to be eligible for naturalization.

8 C.F.R. § 316.5(b)(5).

The Government argues that Elgergawi's reliance on this provision must fail because he never actually established residence at his apartment in Pittsburgh. Residence is defined in the statute as the applicant's principal actual dwelling place. See § 316.5(a). A special agent who examined the purported residence found it was "completely vacant," there was no furniture or common kitchen items in sight, and the landlord stated he never knew Elgergawi to keep furniture or other personal items in the apartment. Elgergawi admits that his principal place of abode was not in Pittsburgh, but rather in Dubai. Pet.

10

Br. 23.  Therefore, Elgergawi is not eligible for the exception listed in § 316.5(b)(5).[4]

For the reasons set forth, we will affirm the judgment of the District Court.

---

[4] In light of our decision, we do not reach the Government's argument regarding the cumulative length of Elgergawi's absences from the United States.