501 P.2d 463

David H. **CAMPBELL**, Superintendent, Motor Vehicle Division, Arizona Highway Department, Petitioner,

v.

The **SUPERIOR COURT** of the State of Arizona, **IN AND FOR** the **COUNTY OF MARICOPA**, The Honorable Gerald J. Strick, the Judge thereof, and Real Parties in Interest, Douglas **BALLARD** and Jane Doe Ballard, his wife, Respondents.

No. 1 CA–CIV 2041.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 28, 1972.

Rehearing Denied Nov. 2, 1972.

Review Denied Dec. 5, 1972.

Gary K. Nelson, Atty. Gen., by Donald O. Loeb, Asst. Atty. Gen., Phoenix, for petitioner.

Otto H. Linsenmeyer by Frank E. Dickey, Jr., Phoenix, for respondents.

JACOBSON, Judge.

This special action questions the propriety of the trial court's denial of a motion for summary judgment on the grounds that a genuine issue of material fact existed, although the administrative decision engendering the litigation had become statutorily final.

The case comes before us after the trial court's second denial of a motion for summary judgment. We took jurisdiction of the State's petition for a writ of prohibition to determine if the trial court was attempting to do an idle thing by proceeding to a trial *de novo* on matters adjudicated by an administrative agency. Renck v. Superior Court, 65 Ariz. 320, 187 P.2d 656 (1947); Southwest Cooperative Wholesale v. Superior Court, 13 Ariz.App. 453, 477 P.2d 572 (1970).

Prior to this litigation respondent Ballard operated Doug's Truck Stop, a business engaged primarily in the sale of fuel to travelling motorists, located off Interstate Highway 10 in Casa Grande, Arizona. Pursuant to A.R.S. § 28–1573 an audit assessment was prepared by the Motor Vehicle Division of the Arizona Highway Department which revealed that respondent Ballard was delinquent in the payment of use fuel taxes to the State of Arizona in the amount of $39,011.97 for the audit period of July 1, 1969, to June 30, 1970.[1]

Since respondent had lost certain records relating to his sales of use fuel for the period in question, the audit was based primarily upon the signed and unsigned sales receipts of the respondent's sole supplier of use fuel.[2]

After notice, an informal hearing was held on September 9, 1970, followed by an administrative hearing held on November 20, 1970, both at the offices of the Motor Vehicle Division in Phoenix, Arizona. At the second hearing respondent Ballard was present in person and through counsel who presented favorable testimony and cross-examined adverse witnesses. Following the second hearing, the superintendent of the Motor Vehicle Division upheld the assessment which became final fifteen days

---

1. In 1968 the legislature completely revised Article 2 of Chapter 9, Title 28, A.R.S., dealing with the use fuel tax. This revision in essence transferred the liability for the tax from the user of the fuel to the vendor as collector of the tax for the state. This legislation became effective July 11, 1969.

2. This auditing method is sanctioned by a rebuttable presumption that "the vendor's total use fuel acquisitions have been delivered into the fuel tanks" of highway travelling motorists. A.R.S. § 28–1556, subsec. B (1968).

after serving notice thereof upon the respondent. A.R.S. § 28–1577.[3]

In March 1971, the State of Arizona brought suit against respondent Ballard to enforce collection of the tax delinquency. Respondent answered and filed a counterclaim challenging the validity of the assessment. The trial court granted the State's motion for summary judgment against the counterclaim but denied the remainder thereof, finding "a genuine issue of material fact with regard to the volume of fuel delivered" to the respondent. Contending that the superintendent's decision had become final and was thereby *res judicata*, the State filed its second motion for summary judgment which was also denied, giving rise to this special action.

The State contends that the decision of the superintendent is final and *res judicata* and may not be collaterally attacked in a judicial proceeding brought to collect the tax delinquency, and that since the respondent failed to adhere to the statutory condition precedent of payment of taxes under protest he is precluded from challenging either the validity or the amount of the assessment.

■ The State's contention of finality, grounded on A.R.S. § 28–1577, addresses itself primarily to the failure of the respondent to avail himself of the judicial review provided by statute. As the Arizona Supreme Court has stated:

"Where the statute gives the discretion and final determination to a lower board or commission and makes such determination final and conclusive, it has such conclusive effect only in the absence of an appeal to the superior court." Davis v. Brittain, 89 Ariz. 89, 95, 358 P.2d 322, 326 (1960), mod., 92 Ariz. 20, 373 P.2d 340 (1962).

Other opinions expressing the rule are Duncan v. Mack, 59 Ariz. 36, 122 P.2d 215 (1942), and Manning v. Perry, 48 Ariz.

425, 62 P.2d 693 (1936); *see* Lane v. Ferguson, 62 Ariz. 184, 156 P.2d 236 (1945).

The Legislature provided a judicial review procedure for taxpayers, like respondent Ballard, aggrieved by use fuel tax assessments. The pertinent provision of A.R.S. § 28–1585, subsec. B (1969) states in part that:

"After payment of the excise tax or other amount under protest, verified and setting forth the grounds of objection to the legality thereof, filed with the superintendent at the time of payment of the amount protested, the licensee making the payment may bring an action against the superintendent in the superior court of Maricopa county for recovery of the amount paid under protest."

Although no direct appeal from the administrative decision is expressly provided, an action "for recovery of the amount paid under protest" constitutes the equivalent of an appeal, since failure to sue for recovery operates as a "waiver of all demands against the state on account of the protested payment", and "no ground of illegality shall be considered by the court other than as set forth in the protest filed at the time of payment." A.R.S. § 28–1585, subsec. B. If an aggrieved taxpayer does not timely sue for recovery of taxes paid under protest, within ninety days after payment, the taxpayer loses the right to challenge the assessment in whole or in part. A.R.S. § 28–1585, subsec. B. This legislation is in accord with judicial decisions in the area of taxpayer relief:

"If the taxpayer desires to question the classification in which he has been placed by the [tax collector] or to raise any other question involving the validity of the tax he may do so in his action for the recovery of the taxes paid." Smotkin v. Peterson, 73 Ariz. 1, 5, 236 P.2d 743, 745 (1951).

Therefore, we are of the opinion that the Legislature provided for a judicial ap-

---

3. A.R.S. § 28–1577 provides in part that, "The order of the superintendent after consideration of the evidence presented at the hearing shall become final fifteen days after serving notice thereof."

peal from an administrative determination relating to use fuel tax assessments by taxpayers aggrieved thereby. Davis v. Brittain, *supra*; Duncan v. Mack, *supra*.[4]

█ Having failed to avail himself of this statutorily granted judicial review did the administrative determinations become final and *res judicata*? The great weight of authority holds that the judicial doctrine of *res judicata* is part of administrative law. 2 Davis, Administrative Law Treatise § 18.02 (1958). The doctrine "rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations." Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898, 905 (1948). Justice White of the United States Supreme Court succinctly summarized the rule when he wrote that, "when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." United States v. Utah Const. & Min. Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642, 661 (1966); *see* Martin v. Industrial Commission, 4 Ariz. App. 547, 422 P.2d 178 (1967).

Applying these principles to the instant case, we hold that the superintendent's decision should be given *res judicata* effect. The record made before this Court reveals that respondent had an opportunity before the administrative tribunal to litigate adequately all the factual disputes he now wishes to present to the superior court.

The State's second contention that the respondent's failure to follow the statutory manner for contesting the assessment—payment of taxes under protest—precludes him now from challenging the assessment expresses a general rule of tax law. Mountain View Pioneer Hosp. v. Empl.

Sec. Comm., 107 Ariz. 81, 482 P.2d 448 (1971); Smotkin v. Peterson, *supra*; Williams v. Bankers National Ins. Co., 80 Ariz. 294, 297 P.2d 344 (1956). Such is the rule also in the absence of a statutory remedy or relief. State Tax Commission v. Superior Court, 104 Ariz. 166, 450 P.2d 103 (1969). When an aggrieved taxpayer fails to follow "the statutory procedure for perfecting an appeal . . . he is thereby precluded from asserting his right to judicial review and the trial court is without jurisdiction to entertain such action." Mountain View Pioneer Hosp. v. Empl. Sec. Comm., *supra*, 107 Ariz. at 85, 482 P. 2d at 452.

Respondent Ballard failed to comply with the judicial review procedure outlined in A.R.S. § 28–1585, subsec. B. He has not yet paid the delinquent taxes. Therefore, we hold that he cannot challenge the validity of the tax assessment against his business.

█ However, Ballard contends that he is not foreclosed from a challenge until three years have elapsed from the date of the assessment, relying upon A.R.S. § 28–1579 which provides that:

"If any amount has been illegally or erroneously assessed against a licensee, the superintendent shall cancel that amount upon his records if a written claim therefor is made within three years after the illegal or erroneous assessment is made."

Under the procedural and factual posture respondent has placed himself in this litigation we are of the opinion that he may not avail himself of the benefit of this statute.

█ The statutory procedure for collection of the use fuel tax provides that the vendor of the fuel shall collect the tax at the time of sale from the user of the fuel. A.R.S. § 28–1555. By the 25th of each month the vendor shall pay to the superin-

---

4. It follows that the Judicial Review of Administrative Decisions Act, A.R.S. § 12–901 et seq. (1954), is not applicable, as A.R.S. § 28–1585 "provides for judicial review of the agency decisions and prescribes a definite procedure for the review." A.R.S. § 12–902, subsec. A.

tendent of the Motor Vehicle Division all taxes so collected for the previous month. A.R.S. § 28–1557. The remittance of the tax by the vendor shall be accompanied by a report procured by the vendor showing, among other things, the amount of use fuel sold during the previous month. A.R.S. § 28–1571.

In the event the superintendent is not satisfied with this report or the amount of taxes paid by the vendor, the superintendent may make an additional assessment of taxes due. A.R.S. § 28–1573. (This was the procedure utilized by the petitioner in this case.) This must be done, however, by the superintendent within three years after the alleged erroneous report was filed. A.R.S. § 28–1574. If the vendor is not satisfied with this additional assessment he may, within 15 days, request a hearing before the superintendent and present evidence as to why the assessment is in error. A.R.S. § 28–1577. (This procedure was utilized by respondent in this action.) Failure to request a hearing within the 15-day period results in the assessment becoming final. A.R.S. § 28–1577. A.R.S. § 28–1577 further provides that the decision of the superintendent shall become final 15 days after service of the notice of that decision. In our opinion, to avoid the finality of this order, the vendor must avail himself of the provision of A.R.S. § 28–1585 by paying the tax under protest within the 15-day period and bringing suit in Superior Court within 90 days after that date. Failure to file within the 90 day period results in a waiver of all demands against the state. A.R.S. § 28–1585.

■■■ As can be seen, the time limitations within which a vendor may avoid the imposition of an additional tax assessment are rather stringent. Request of hearing within 15 days of notice of assessment; payment under protest within 15 days following notice of the superintendent's decision; filing suit within 90 days of payment under protest.) If, as contended by respondent, A.R.S. § 28–1579 allowing for cancellation of an erroneous assesssment within three years is applicable to the hearing procedures set forth above, these stringent time limitations become meaningless. Under rules of statutory construction, all statutes dealing with the same subject matter must be read together and meaning given to each statute. City of Scottsdale v. McDowell Mtn. Irr. and Drainage Dist., 107 Ariz. 117, 483 P.2d 532 (1971); In re Maricopa County Appeal, 15 Ariz.App. 536, 489 P.2d 1238 (1971). Moreover, courts are admonished to avoid a construction of statutes which would render them meaningless or of no effect. City of Phoenix v. Superior Court, 101 Ariz. 265, 419 P.2d 49 (1966); Wiseman v. Arizona Highway Dept. ex rel. Campbell, 11 Ariz.App. 301, 464 P.2d 372 (1970). While we need not in this opinion determine under what circumstances A.R.S. § 28–1579 would be applicable, we have no hesitancy in holding that where a vendor has utilized the administrative hearing procedures granted under A.R.S. § 28–1577 and that administrative decision has become final, A.R.S. § 28–1579 is not applicable.

For the foregoing reasons, the relief requested in this special action is granted and the superior court is instructed to enter summary judgment in petitioner's favor.

HAIRE, C. J., Division 1, and EUBANK, J., concur.