IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

FALCONE BROTHERS & ASSOCIATES, INC.,
AN ARIZONA CORPORATION,
*Plaintiff/Appellant*,

*v.*

CITY OF TUCSON,
AN ARIZONA MUNICIPAL CORPORATION,
*Defendant/Appellee*.

No. 2 CA-CV 2015-0212
Filed August 25, 2016

---

Appeal from the Superior Court in Pima County
No. C20152217
The Honorable Richard S. Fields, Judge
The Honorable Richard E. Gordon, Judge

**REVERSED AND REMANDED**

---

COUNSEL

Carmichael & Powell, P.C., Phoenix
By David J. Sandoval
*Counsel for Plaintiff/Appellant*

Michael G. Rankin, Tucson City Attorney
By Stacy Stauffer, Principal Assistant City Attorney, Tucson
*Counsel for Defendant/Appellee*

## OPINION

Chief Judge Eckerstrom authored the opinion of the Court, in which Presiding Judge Vásquez and Judge Miller concurred.

E C K E R S T R O M, Chief Judge:

**¶1**　　　Following a contractual dispute regarding a road-improvement project, appellant Falcone Brothers and Associates, Inc. (Falcone) filed a civil complaint against appellee City of Tucson (City). The City maintained that the action was barred because the issues already had been decided by the City's director of procurement and that Falcone had refused to challenge the director's "administrative decision" by special action as required by the parties' contract and the City's code. We conclude that neither the contract nor the City code can direct judicial review of a breach-of-contract claim by special action; therefore, we reverse the trial court's order granting the City's motion to dismiss and remand the case for further proceedings.

## I. Factual and Procedural Background

**¶2**　　　In 2012, Falcone and the City executed a contract that incorporated chapter 28 of the Tucson Code, a chapter also known as the Procurement Code. Under the applicable version of that code, a dispute regarding a contract would be decided first by a contract officer from the City's Procurement Department. Tucson, Ariz., Code ("TC") §§ 28-76, 28-91 to 28-93 (1987 & Supp. 2007).[1] An

---

[1] The contract here incorporated and modified the City's "Standard Specifications" to create what was nominally a three-step process of dispute resolution. The first step required submission of a claim to the Tucson Department of Transportation (TDOT) for a "'field' level" review. The second and third steps involved "review" by the Procurement Department and City Attorney's Office, respectively. In light of the contract's amendment to § 105-18(C) of the Standard Specifications, however, no process was provided for a decision by TDOT. The only decision described in the contract was

aggrieved party then could file an appeal with the City's director of procurement. TC § 28-94. If the director assigned the claim to a hearing, the director would appoint a hearing officer to conduct the proceeding and make a recommendation, which included proposed findings and conclusions. *See* TC §§ 28-94(3), 28-96, 28-113, 28-114(1). The Procurement Code broadly authorized the director to "affirm, modify, or reject the hearing officer's recommendation in whole or in part, . . . remand the matter to the hearing officer with instructions, or make any other appropriate disposition." TC § 28-114(2). The Procurement Code specified that "[a] decision by the director shall be final." TC § 28-115. Under TC §§ 28-117 and 28-118, the director's final decision could only be challenged by "special action review" in the superior court filed within thirty days. The Procurement Code stated that "[e]xhaustion of the procedures set forth in this Code shall be a condition precedent to seeking judicial review," TC § 28-117, and that the code "provide[d] the exclusive procedure for asserting a claim or cause of action against this city" that arose from a procurement contract. TC § 28-118.

¶3　　　　According to Falcone, the company suffered approximately $2.5 million in damages from the construction project. Those damages included the additional costs that Falcone incurred from errors in the plans it had relied on to formulate its bid, as well as unforeseeable utility conflicts and subterranean structures for which the City bore responsibility.

¶4　　　　In 2014, Falcone submitted a notice of claim pursuant to A.R.S. § 12-821.01, expressly reserving its right to file a civil suit. In the notice, the company maintained "the claim procedure set forth in the Contract [w]as illegal and unenforceable," but Falcone nonetheless agreed to participate in the City's administrative

---

one "made by the Procurement Department's Contract Officer in accordance with" the Procurement Code. We further note that the City's brief does not refer to any independent decision by TDOT. Instead, the City states that Falcone brought "its original contract claim [in] the Procurement Department." We therefore understand the City's contract officer as either issuing or participating in the initial decision.

proceedings. In the first stage of that process, a City contract officer rejected Falcone's claim in its entirety. After Falcone appealed, a hearing officer conducted an evidentiary hearing and recommended to the director that the claim be denied. The director then issued a decision on April 20, 2015, denying Falcone any additional compensation.[2]

¶5 Despite the limitation in TC § 28-117, Falcone did not seek special action relief from this decision. Instead, the company filed a complaint in the superior court asserting claims of breach of contract and unjust enrichment. The City filed a motion under Rule 12(b)(1), Ariz. R. Civ. P., to dismiss the complaint on three grounds: failure to exhaust administrative remedies, res judicata, and collateral estoppel. The trial court granted the motion after oral argument, stating that the grounds for its decision were "stated on the record." Neither party provided a transcript of the hearing. This appeal by Falcone followed.

## II. Appellate Jurisdiction

¶6 With respect to the procedures applicable to a case such as this, both parties have cited this court's opinion in *Richard E. Lambert, Ltd. v. City of Tucson Department of Procurement*, 223 Ariz. 184, 221 P.3d 375 (App. 2009). There, the aggrieved contractor pursued an appeal in the superior court that was characterized as a "special action" under the City's Procurement Code. *Lambert*, 223 Ariz. 184, ¶¶ 4-5, 221 P.3d at 377-78. We expressly declined to address whether this procedure was proper. *Id.* n.1. We also implied that we had appellate jurisdiction over the resulting judgment from the superior court under the former A.R.S.

---

[2]The parties have failed to provide accurate record citations showing whether this item is included in the record on appeal. *See* Ariz. R. Civ. App. P. 13(a)(5), (7)(A), (b)(1). Yet no dispute exists regarding the date or nature of the director's decision.

§ 12-2101(B), which was later renumbered § 12-2101(A)(1).[3] *See Lambert*, 223 Ariz. 184, ¶ 5, 221 P.3d at 378.

**¶7**        That provision allows an appeal to this court when an action is "commenced in a superior court." § 12-2101(A)(1). However, neither an appeal nor a special action in the superior court is "commenced" there within the meaning of this statute. *Stant v. City of Maricopa Emp. Merit Bd.*, 234 Ariz. 196, ¶¶ 7-8, 319 P.3d 1002, 1004-05 (App. 2014). Accordingly, because *Lambert* did not identify a proper ground for appellate jurisdiction, we do not rely on that case as precedent.

**¶8**        The present case differs from *Lambert* because Falcone filed a civil complaint in the superior court. The case therefore "commenced" in that court pursuant to § 12-2101(A)(1), and the trial court's dismissal order is a "final judgment" subject to appeal. *Id.* Although the court's order initially lacked certification pursuant to Rule 54(c), Ariz. R. Civ. P., we have stayed the appeal and revested jurisdiction in the superior court to obtain such certification. *See* Ariz. R. Civ. App. P. 3; *Madrid v. Avalon Care Ctr.-Chandler, L.L.C.*, 236 Ariz. 221, ¶ 5, 338 P.3d 328, 330-31 (App. 2014). With a formal judgment now included in the record on appeal, we have appellate jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

### III. Discussion

**¶9**        As it did below, Falcone claims on appeal that the "administrative process" prescribed by the City violates Falcone's constitutional rights to due process and a jury trial. Specifically, Falcone maintains that the City's director of procurement is not a neutral arbiter of the City's contract disputes and that the limited process of review afforded by the City denies an aggrieved party the opportunity for "a de novo review of the facts" by an impartial decision-maker. In light of these alleged constitutional defects, Falcone asserts that the trial court erred in granting the City's

---

[3]*Anderson v. Valley Union High Sch., Dist. No. 22*, 229 Ariz. 52, ¶ 3 & n.1, 270 P.3d 879, 881 & n.1 (App. 2012).

motion to dismiss and that the "civil complaint was appropriately filed and should be tried on its merits."

¶**10**         Rule 12(b)(1) allows a trial court to dismiss an action for lack of subject matter jurisdiction. When, as here, a trial court's disposition of such a motion does not resolve any disputed jurisdictional facts, we review the court's ruling de novo. *See Church of Isaiah 58 Project of Ariz., Inc. v. LaPaz County*, 233 Ariz. 460, ¶ 9 & n.4, 314 P.3d 806, 808-09 & 809 n.4 (App. 2013).

¶**11**         As our supreme court established in *R.L. Augustine Construction Co. v. Peoria Unified School District No. 11*, "[w]e will not reach a constitutional question if a case can be fairly decided on nonconstitutional grounds." 188 Ariz. 368, 370, 936 P.2d 554, 556 (1997). Following that precedent, we avoid Falcone's constitutional arguments and decide the present case on a narrow basis. Our analysis that follows will establish, first, that Falcone properly asserted a contract claim in the superior court that is subject to trial on a de novo basis; second, the City's Procurement Code was invalid insofar as it attempted to make the director's decision binding and to limit access to the superior court by restricting parties to special action review; and third, none of the doctrines identified in the City's motion to dismiss would bar Falcone's action.

## A.  Superior Court Jurisdiction

¶**12**         The superior court's jurisdiction is provided by our state constitution and statutes. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, ¶ 13, 218 P.3d 1045, 1052 (App. 2009); *see* Ariz. Const. art. VI, §§ 14, 16, 18. The court is one of general jurisdiction, *State ex rel. Neely v. Brown*, 177 Ariz. 6, 8, 864 P.2d 1038, 1040 (1993), with original jurisdiction to resolve contract disputes in which the amount in controversy is at least $1,000. *See* Ariz. Const. art. VI, § 14(3). Because the present contract claim exceeds this amount, the superior court has jurisdiction over the case.

¶**13**         "[A] city has no authority to limit the jurisdiction of the state's courts." *Tempe Life Care Vill., Inc. v. City of Tempe*, 148 Ariz. 264, 266, 714 P.2d 434, 436 (App. 1985). A superior court's jurisdiction can only be limited by law, not by a city's charter or an

agreement between two parties. *See Grosvenor*, 222 Ariz. 588, ¶ 21, 218 P.3d at 1053-54; *Tempe Life Care Vill.*, 148 Ariz. at 266, 714 P.2d at 436. When an action presents a traditional contract claim and no statute gives another entity exclusive jurisdiction over the matter, the superior court retains jurisdiction to resolve the claim. *See Campbell v. Mountain States Tel. & Tel. Co.*, 120 Ariz. 426, 432, 586 P.2d 987, 993 (App. 1978). We therefore must examine whether the City's Procurement Code is supported by any enabling legislation and, if not, whether it is nevertheless enforceable as a matter of contract.

## B.  Procurement Code Validity

### 1.  Legal Authorization

¶14        At oral argument, the City failed to identify any specific law authorizing its Procurement Code. Instead, the City referred to the general provisions from article XIII, § 2 of the Arizona Constitution and A.R.S. §§ 9-137 and 9-499.01. The City also observed in passing that its Procurement Code is modeled after the state procurement code, A.R.S. §§ 41-2501 to 41-2673.

¶15        We recognize that § 41-2501(C) allows "political subdivisions" such as cities to "adopt all or any part" of the state procurement code. *See City of Tucson v. Fleischman*, 152 Ariz. 269, 272, 731 P.2d 634, 637 (App. 1986) ("The general rule is that cities are political subdivisions of the state."); *cf.* Model Procurement Code for State & Local Governments § 1-104, Alternative B (Am. Bar Ass'n 2000) ("All political subdivisions and other local public agencies of this State are authorized to adopt all or any part of this Code and its accompanying regulations."). Section 41-2614 of our state code provides that a final administrative decision concerning procurement is subject to judicial review under the Administrative Review Act (ARA), A.R.S. §§ 12-901 to 12-914. And, consistent with the City's position, judicial review under the ARA is initiated by filing a notice of appeal in the superior court. *See* §§ 12-904, 12-905. Although the ARA generally is inapplicable to cities, *see* § 12-901(1); *Stant*, 234 Ariz. 196, ¶ 10, 319 P.3d at 1005, a specific statute could authorize cities to adopt it. *See Augustine*, 188 Ariz. at 371, 936 P.2d at 557. It therefore could be argued that the City's Procurement

Code was an analogous local version of the state code, and consequently authorized by § 41-2501(C). *See* Model Procurement Code for State & Local Governments § 1-104 cmt. to Alternative B (noting that application or adoption of model code requires "various sections of this Code . . . to be adjusted" for local governments). Because the City has developed no such contention on appeal, however, we need not address the numerous legal issues that might attend this line of argument.

**¶16** Ultimately, we conclude the City's Procurement Code was neither an adoption of nor a permissible extension of the state procurement code because the City's Procurement Code shared the same essential defect identified in *Augustine*. There, our supreme court explained that the state procurement code normally provides a "two-tiered administrative process" of review prior to possible court action. *Augustine*, 188 Ariz. at 370, 936 P.2d at 556. Under that system, a contract claim first is reviewed by the governmental unit that purchased the goods or services. *Id.* A second level of review then occurs with the director of the department of administration. *Id.* In this way, the state procurement code creates a "dual entity scheme" of review in which "the purchasing agency and the director are separate entities." *Id. Augustine* expressly noted that it did not address the situation where the department of administration was also the purchasing entity. *Id.* at 370 n.1, 936 P.2d at 556 n.1.

**¶17** In *Augustine*, the state board of education had attempted to create a review process consistent with the state procurement code. *See id.* at 370, 936 P.2d at 556. But that process deviated from the state code insofar as it allowed the governing boards of school districts to resolve their own contract disputes. "[W]hile structured as a two-tiered process in form, in substance [it] provide[d] a one-tier process in which the purchasing body constitute[d] both the first and second tier." *Id.*

**¶18** The City's process here shared the same critical defect. The director of procurement executed the contract with Falcone. A City contract officer served as the first administrative adjudicator in the procurement dispute. *See* TC §§ 28-91 to 28-93. The second level of administrative review then took place before a hearing officer selected by the City's procurement director. *See* TC §§ 28-94, 28-96,

28-113.  But that hearing officer made only recommended findings and conclusions; the City's procurement director retained the ultimate decision-making authority in the proceeding.  *See* TC §§ 28-114, 28-115.[4]

**¶19**        These are the same operative facts as in *Augustine*, 188 Ariz. at 370, 936 P.2d at 556.  Despite its formalities, the City's process provided only one level of administrative review in which the City, through its agents and employees, acted as "both the first-tier reviewer and the second-tier final decision maker."  *Id.*; *see also State ex rel. Thomas v. Schneider*, 212 Ariz. 292, ¶ 16, 130 P.3d 991, 995 (App. 2006) ("Like other legal entities, a city 'can only act through its agents.'"), *quoting Samaritan Found. v. Goodfarb*, 176 Ariz. 497, 502, 862 P.2d 870, 875 (1993).  The City, through its director of procurement, was a party to the contract under review. *See Augustine*, 188 Ariz. at 370, 936 P.2d at 556.  Thus, as *Augustine* established, the City's scheme was inconsistent with Arizona's procurement code.  The City failed to "adopt" the state procurement code within the meaning of § 41-2501(C).

**¶20**        The City alternatively asserts that the administrative review process under its Procurement Code is authorized by a portion of our notice-of-claim statute, § 12-821.01(C). Yet this statute does not serve as enabling legislation.  Section 12-821.01(C) merely establishes the time for filing a notice of claim.  The provision specifies the "accru[al]" date for claims against public entities that must first be submitted to a non-judicial review process "pursuant to a statute, ordinance, resolution, administrative or governmental rule or regulation, or contractual term."  *Id.*  The statute does not give cities authority to establish unlimited administrative-claims processes; rather, the law presumes that authority for the particular claims process exists in another source, such as a statute or contract.

---

[4]We note that the process has changed materially due to amendments to the Procurement Code in 2015.  *See* Tucson, Ariz., Ordinance No. 11296, § 1 (Aug. 5, 2015).  Our analysis does not address the present code.

## 2. Contractual Authorization

**¶21** At oral argument, the City suggested its administrative review process is enforceable as an arbitration agreement because the parties mutually agreed to be bound by this alternative dispute resolution process. Putting aside the fact that the Procurement Code itself distinguished the process here from arbitration, *see* TC §§ 28-94, 28-98, we are not persuaded by the City's contractual argument. The enforceability of an arbitration provision is determined by considering the provision as an independent agreement, separate from the underlying contract. *Stevens/Leinweber/Sullens, Inc. v. Holm Dev. & Mgmt., Inc.*, 165 Ariz. 25, 29-30, 795 P.2d 1308, 1312-13 (App. 1990). "An arbitration provision is not valid or enforceable where 'a ground exists . . . at law or in equity for the revocation of a contract,'" *Austin v. Austin*, 237 Ariz. 201, ¶ 12, 348 P.3d 897, 902 (App. 2015), *quoting* A.R.S. § 12-3006(A), such as substantive unconscionability. *Clark v. Renaissance W., LLC*, 232 Ariz. 510, ¶ 8, 307 P.3d 77, 79 (App. 2013). For example, arbitration agreements are unconscionable and unenforceable when they give an employer unrestricted control over the selection of arbitrators such that the employer's own managers can serve as the sole decision makers in the dispute. *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938-40 (4th Cir. 1999).

**¶22** In this case, the City's director of procurement not only selected the hearing officer, without any apparent constraints on this appointment power, TC § 28-113, but the director also retained the authority to reject that hearing officer's recommendation, modify it, "or make any other appropriate disposition." TC § 28-114(2). Such a one-sided scheme is invalid because it denies the other party a neutral, unbiased decision maker. *See Hooters of Am.*, 173 F.3d at 940; *cf. Stevens/Leinweber/Sullens, Inc.*, 165 Ariz. at 30, 795 P.2d at 1313 (finding arbitration agreement unenforceable when one party's discretion over dispute-resolution process was "grossly inequitable"). In short, the same self-dealing feature that made the City's process of administrative review deviate from the state procurement code also rendered that process unenforceable as a matter of contract law.

**¶23** In the absence of any statutory or contractual authorization, the City therefore could not render binding decisions in its contractual disputes or limit aggrieved parties to "special action review" under TC § 28-117.[5] When no statutory authority exists for review before the superior court, an agreement purporting to create such review is invalid and unenforceable. *Grosvenor*, 222 Ariz. 588, ¶¶ 14-16, 218 P.3d at 1052. Similarly, unless an ordinance concerning judicial review "is supported by and implicates a statute that expressly gives the superior court subject matter jurisdiction," such an ordinance is invalid. *Id.* ¶ 26.

**¶24** Applying these principles in *Grosvenor*, we held void a contractual provision that attempted to limit the superior court's role in a contract action. *Id.* ¶ 28. The provision there essentially transformed "a de novo complaint" for breach of contract into "nothing more than a request for review under the ARA." *Grosvenor*, 222 Ariz. 588, ¶ 21, 218 P.3d at 1054. In effect, the parties' contract waived the right to a jury trial by making the county's administrative decision final and subjecting that decision only to a limited form of judicial review in the superior court. *See id.* ¶¶ 3-7. In *Grosvenor*, we held this provision void despite the fact that it had been negotiated by sophisticated parties. *Id.* ¶ 28 & n.4.

**¶25** Here, as in *Grosvenor*, the superior court's jurisdiction over the contract claim could not be limited by the City. Nor could the City limit the trial court's role in that action, effectively denying Falcone a trial de novo on its breach-of-contract claim. Although the City's ordinance was patterned after the state procurement code, the ARA's provision limiting the scope of judicial review did not apply because the ordinance failed to conform to the state code. Special action review likewise did not apply, because the City's administrative review process made "the interested party . . . the

_____

[5]Because Falcone otherwise participated in the review process prescribed by the Procurement Code, we need not decide whether the City could compel participation in that process as a mere condition of bringing suit. We further note that the City has not argued Falcone waived any challenge to the administrative review process by entering into the underlying contract with the City.

adjudicator of contract obligations," *Augustine*, 188 Ariz. at 370, 936 P.2d at 556, without any legal authority. Only statutes and court rules govern special actions in the superior court. *See Schoenberger v. Bd. of Adjustment of City of Phx.*, 124 Ariz. 528, 530, 606 P.2d 18, 20 (1980); *see also Seisinger v. Siebel*, 220 Ariz. 85, ¶¶ 7-8, 203 P.3d 483, 486-87 (2009). Without a lawful administrative review process in place, the City could neither effectuate a waiver of trial rights nor shield itself from de novo review of contract claims. *Cf. Tempe Life Care Vill.*, 148 Ariz. at 266, 714 P.2d at 436 (distinguishing a "charter city's enforcement of its ordinances" from "a ruling made by a state administrative agency"). Just as the contractual provisions in *Grosvenor* were invalid and unenforceable, TC §§ 28-117 and 28-118 were similarly invalid insofar as they designated special action review in the superior court the exclusive avenue for judicial relief.

**¶26** Moreover, to the extent the City believed a special action was available under our general certiorari statute, A.R.S. § 12-2001, *see* Ariz. R. P. Spec. Act. 1(b), we note that certiorari does not exist as a matter of right; it is discretionary with the superior court. *See Bilagody v. Thorneycroft*, 125 Ariz. 88, 92, 607 P.2d 965, 969 (App. 1979); *see also Book Cellar, Inc. v. City of Phoenix*, 139 Ariz. 332, 336, 678 P.2d 517, 521 (App. 1983); *Estrin v. Superior Court*, 96 P.2d 340, 342 (Cal. 1939).[6] In addition, no time limit exists for a certiorari action; the doctrine of laches serves as the only limitation. *Schoenberger*, 124 Ariz. at 530, 606 P.2d at 20. An ordinance purporting to place a time limit on a certiorari action is invalid. *Id.* Accordingly, TC § 28-117 neither created a right of review in the superior court nor limited the time for judicial review to occur, and Falcone was not required to seek relief through a void ordinance. *See Manning v. Reilly*, 2 Ariz. App. 310, 312, 408 P.2d 414, 416 (1965).

---

[6] "Our constitutional and statutory provisions relative to certiorari are comparable to those of California and other neighboring states." *Hunt v. Norton*, 68 Ariz. 1, 5, 198 P.2d 124, 126 (1948).

## C. The City's Arguments

### 1. Exhaustion of Administrative Remedies

¶27        Contrary to the City's assertion, the exhaustion doctrine does not support the dismissal of the present case.  This doctrine generally provides that a party must exhaust all available administrative remedies before seeking relief in the courts.  *See Sw. Soil Remediation, Inc. v. City of Tucson*, 201 Ariz. 438, ¶ 12, 36 P.3d 1208, 1212 (App. 2001).  But the doctrine "must be applied in each case with an 'understanding of its purposes and of the particular administrative scheme involved.'"  *Farmers Inv. Co. v. Ariz. State Land Dep't*, 136 Ariz. 369, 373, 666 P.2d 469, 473 (App. 1982), *quoting McKart v. United States*, 395 U.S. 185, 193 (1969).  "The basic purpose of the doctrine is to allow an administrative agency to perform functions within its special competence — to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies."  *Id.*, *quoting Parisi v. Davidson*, 405 U.S. 34, 37 (1972).

¶28        Assuming for the purpose of argument that the City's Procurement Code is valid, the fact remains that Falcone exhausted all administrative remedies in this case.  When the procurement director issued his or her decision, the matter became complete for administrative purposes.  "The administrative remedy that must be exhausted is the main event."  *Sw. Paint & Varnish Co. v. Ariz. Dep't of Envtl. Quality*, 194 Ariz. 22, ¶ 15, 976 P.2d 872, 875 (1999).  No request for rehearing was required in order for the matter to be exhausted.  *Id.*

¶29        Although the City maintains Falcone failed to exhaust administrative remedies because it did not file a special action in the superior court, as prescribed by TC § 28-117, the City overlooks the fact that certiorari is not an "administrative" remedy that must be exhausted before a party may seek relief in court.  "According to the doctrine of exhaustion of remedies, 'litigants may not seek judicial relief for a supposed or threatened injury *until the prescribed administrative remedy has been exhausted.*'"  *Moulton v. Napolitano*, 205 Ariz. 506, ¶ 9, 73 P.3d 637, 642 (App. 2003), *quoting Medina v. Ariz. Dep't of Transp.*, 185 Ariz. 414, 417, 916 P.2d 1130, 1133 (App. 1995)

(emphasis added). All administrative remedies were exhausted in this case upon the director's decision, even assuming arguendo that the exhaustion doctrine applied.

## 2. Res Judicata, Collateral Estoppel

**¶30** Relying on *Guertin v. Pinal County*, 178 Ariz. 610, 875 P.2d 843 (App. 1994), and *Hurst v. Bisbee Unified School District No. Two*, 125 Ariz. 72, 607 P.2d 391 (App. 1979), the City maintains that the procurement director's decision should be given finality and that Falcone's contract claim should be dismissed as an impermissible collateral attack on that decision. Citing *Hurst*, 125 Ariz. at 75, 607 P.2d at 394, the City specifically asserts that Falcone's due process argument is precluded because the administrative decision "is conclusively presumed to be just, reasonable and lawful" in the absence of a special action taken under TC § 28-117. The cases cited are inapt for several reasons.

**¶31** First, the cases are distinguishable because they involved entities that were authorized by statute to conduct a non-judicial review in the first instance. *See Guertin*, 178 Ariz. at 611 n.1, 875 P.2d at 844 n.1; *Hurst*, 125 Ariz. at 76, 607 P.2d at 395. The City is a municipal corporation, *City of Tucson v. Rineer*, 193 Ariz. 160, ¶ 2, 971 P.2d 207, 208-09 (App. 1998), and lacks legal authority for its administrative scheme here.

**¶32** A second, yet related, distinguishing factor concerns finality. Collateral estoppel requires, among other things, "a valid and final decision on the merits." *Aldabbagh v. Ariz. Dep't of Liquor Licenses & Control*, 162 Ariz. 415, 418, 783 P.2d 1207, 1210 (App. 1989), *quoting Gilbert v. Bd. of Med. Exam'rs*, 155 Ariz. 169, 174, 745 P.2d 617, 622 (App. 1987). Both *Guertin* and *Hurst* involved statutes that granted a right of judicial review to parties but otherwise gave finality to the non-judicial decisions that had been issued. *See Guertin*, 178 Ariz. at 611-12, 875 P.2d at 844-45; *Hurst*, 125 Ariz. at 73-75, 607 P.2d at 392-94.

**¶33** The City's Procurement Code, by contrast, lacks a statutory right of judicial review. Section 28-117 of the Procurement Code is a nullity, as we explained above, because a city can neither

authorize a special action in the superior court nor limit the time for filing one. Furthermore, no statute here prescribed judicial review as a party's "exclusive remedy." *Guertin*, 178 Ariz. at 612, 875 P.2d at 845. Thus, even assuming the City's procurement director was empowered to make findings in this matter, no law makes those findings binding or gives them preclusive effect in a contract action filed in the superior court. In short, the director's decision lacks statutory finality. *See Campbell v. Superior Court*, 18 Ariz. App. 287, 288, 289, 501 P.2d 463, 464, 465 (1972).

¶34 The City's argument suffers a third flaw insofar as the authorities it relies on upheld decisions that were made after "a full and fair opportunity to litigate the issue." *Guertin*, 178 Ariz. at 612, 875 P.2d at 845. Collateral estoppel only applies when a prior proceeding affords a "full and fair opportunity" for litigation. *Aldabbagh*, 162 Ariz. at 418, 783 P.2d at 1210, *quoting Gilbert*, 155 Ariz. at 174, 745 P.2d at 622. Here, as we previously explained, the City's administrative proceeding allowed the City to adjudicate its own contract dispute. Preclusion of claims "naturally presupposes the opportunity to raise [them] and have [them] timely decided by a competent . . . tribunal." *Gibson*, 411 U.S. at 577. Thus, neither res judicata nor collateral estoppel forecloses an argument "that the administrative body itself was unconstitutionally constituted" and "incompetent by reason of bias to adjudicate the issues . . . before it," *id.*, as Falcone contends here.

¶35 We interpret *Hurst* as being consistent with this authority. Implicit in that opinion are the dual premises that an aggrieved teacher could challenge, by way of her statutory right of appeal, a governing board's decision on the grounds that it was unconstitutional or procedurally unlawful and that this process provided the teacher a full and fair opportunity to litigate any claims concerning due process or bias. *See Hurst*, 125 Ariz. at 73-75, 607 P.2d at 392-94. In essence, *Hurst* was a case in which statutes made the governing board's decision final and conclusive in the absence of an appeal. *See Campbell*, 18 Ariz. App. at 289, 501 P.2d at 465. Unlike *Hurst*, however, there is no basis to presume the City's process is lawful or regular, because that process is neither

statutorily created nor subject to an appeal in which aggrieved parties may challenge the fairness of that system.

## IV. Disposition

¶36     For the foregoing reasons, the trial court's order dismissing the complaint is reversed and the case remanded for further proceedings consistent with this opinion.  We deny Falcone's request for attorney fees, which is made without reference to any statute or contractual provision that would authorize such an award. *See* Ariz. R. Civ. App. P. 21(a)(2); *Ezell v. Quon*, 224 Ariz. 532, ¶ 31, 233 P.3d 645, 652 (App. 2010).  We grant Falcone's request for costs, subject to its compliance with Rule 21(b).