IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

———————————————

IN RE THE MARRIAGE OF

MARIA DEL CARMEN RENDON QUIJADA,
*Appellant,*

*and*

JULIAN JAVIER PIMIENTA DOMINGUEZ,
*Appellee.*

No. 2 CA-CV 2022-0174-FC
Filed June 15, 2023

———————————————

Appeal from the Superior Court in Pima County
No. D20221319
The Honorable J. Alan Goodwin, Judge

**VACATED AND REMANDED**

———————————————

COUNSEL

Ayala Law Office P.C., Tucson
By Siovhan S. Ayala and Robert W. Current
*Counsel for Appellant*

Luke E. Brown, Tucson
*Counsel for Appellee*

**OPINION**

Judge Sklar authored the opinion of the Court, in which Vice Chief Judge Staring and Judge O'Neil concurred.

S K L A R, Judge:

**¶1**     This case concerns the relationship between immigration status and state-law domicile.  At issue is Maria Del Carmen Rendon Quijada's petition for dissolution of her marriage to Julian Javier Pimienta Dominguez.  The parties originally entered the United States on visas prohibiting them from intending to establish residency.  The trial court therefore concluded that federal law precluded Rendon from establishing domicile in Arizona, and it dismissed the case for lack of subject matter jurisdiction. We vacate that dismissal.  Before Rendon filed the petition, she began seeking a visa that could lead to permanent residency.  We therefore conclude that federal law does not prevent her from establishing an Arizona domicile.

**FACTUAL AND PROCEDURAL BACKGROUND**

**¶2**     Rendon and Pimienta married in Mexico in 1999 and share one minor child.  They came to the United States in 2007 on visas created under the North American Free Trade Agreement ("NAFTA").  The visas allow certain categories of business people and their families to enter the United States without establishing permanent residence.  *See* 8 C.F.R. § 214.6.  Pimienta's visa is called a TN visa, which is for employees. Rendon's is called a TD visa, which is sponsored by TN-visa holders for their family members.

**¶3**     Pimienta moved to Virginia no later than March 2021.  He did not sponsor the renewal of Rendon's visa or their son's visa after those visas expired in March 2020.  Rendon remained in Arizona beyond the expiration date.  Pimienta has continued to renew his TN visa.

**¶4**     Pimienta filed for dissolution in Mexico in November 2020. Rendon challenged the Mexican court's jurisdiction on the ground that the parties' marital residence was in Arizona rather than Mexico.  The Mexican court declined jurisdiction and dismissed the case.

¶5             In 2020, Rendon began seeking status as a lawful permanent resident.  The initial step was for her sister, a United States citizen, to file a Petition for Alien Relative with the U.S. Citizenship and Immigration Service ("USCIS").  USCIS received the petition in January 2021.  It remained pending as of the trial court hearing in August 2022.

¶6             In May 2022, Rendon filed the dissolution petition in this case. In response, Pimienta filed a motion to dismiss for lack of subject matter jurisdiction.  He argued that Rendon's immigration status precluded her from being domiciled in Arizona.  After the August 2022 hearing, the trial court dismissed the case.  It concluded that under Ninth Circuit precedent, Rendon could not legally be domiciled in Arizona because she had entered the country on a TD visa.

¶7             This appeal followed.  We have jurisdiction under A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

## STATE-LAW DOMICILE AND FEDERAL SUPREMACY

¶8             We review the trial court's dismissal de novo because its ruling did not resolve any disputed jurisdictional facts.  *See Falcone Bros. & Assocs., Inc. v. City of Tucson*, 240 Ariz. 482, ¶ 10 (App. 2016).  Our analysis begins with the domicile requirement under Arizona's divorce statutes.  For an Arizona court to have jurisdiction over a divorce, at least one party must have been domiciled in Arizona for ninety days before filing a petition for dissolution.  A.R.S. § 25-312(A)(1); *see also Tanner v. Marwil*, 250 Ariz. 43, ¶ 10 (App. 2020) (domicile requirement is prerequisite to subject matter jurisdiction).  Establishing domicile requires "(1) physical presence, and (2) an intent to abandon the former domicile and remain here for an indefinite period of time."  *DeWitt v. McFarland*, 112 Ariz. 33, 34 (1975). Because Pimienta had left Arizona by March 2021, jurisdiction could not be established through his presence and domicile.

¶9             Rendon, however, was physically present in Arizona for ninety days prior to filing the petition.  The trial court would therefore have jurisdiction if Arizona was her domicile.  Instead, however, the court concluded that people who enter the United States on a TN or TD visa lack the legal capacity to intend to abandon their former domicile and remain indefinitely in Arizona.  That is the issue we address.

¶10            Whether the trial court was correct is, at least in part, an issue of federal law, as the federal government has broad power over immigration.  *See Arizona v. United States*, 567 U.S. 387, 394-95 (2012) (citing U.S. Const. art. I, § 8, cl. 4).  This includes power over the status of

noncitizens—a term we use as the equivalent of the statutory term "alien." *Id.* at 394; 8 U.S.C. § 1101(a)(3) (defining "alien" as "any person not a citizen or national of the United States"); *see also Barton v. Barr*, 140 S. Ct. 1442, 1446, n.2 (2020) (equating "noncitizen" with "alien").

**¶11** Given this federal power, any state law that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in regulating immigration is preempted under the Supremacy Clause of the United States Constitution. *Arizona*, 567 U.S. at 406 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). States may neither "add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens." *Toll v. Moreno*, 458 U.S. 1, 11 (1982) (quoting *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419 (1948)). We must therefore address whether allowing Rendon to establish an Arizona domicile would impede Congress's purpose and objectives in regulating immigration. Doing so requires us to address the requirements governing TN-visa holders like Pimienta and TD-visa holders like Rendon.

## REQUIREMENTS OF THE TN VISA AND TD VISA

**¶12** As noted, the TN and TD visas were created under NAFTA. More recently, NAFTA has been replaced by the United States-Mexico-Canada Agreement ("USMCA"), though the visas remain available. Mexican and Canadian citizens are eligible for the TN visa if they "seek[] temporary entry as a business person to engage in business activities at a professional level." 8 C.F.R. § 214.6(d)(1), (2). TN-visa holders like Pimienta may bring their spouses and unmarried minor children to the United States on a TD visa. 8 C.F.R. § 214.6(j)(1). TD-visa holders may be admitted for the same length of time as TN-visa holders. *Id.*

**¶13** Holders of both visas are considered "nonimmigrants." 8 U.S.C. § 1184(e). As relevant here, that term means a noncitizen who resides in a foreign country that "he has no intention of abandoning," and "who is visiting the United States temporarily for business or temporarily for pleasure." 8 U.S.C. § 1101(a)(15)(B). Consistent with that definition, the regulations implementing NAFTA—which, for our purposes are identical under the USMCA—define "temporary entry" as lacking an intent to remain permanently in the United States. Specifically, the term means:

> [E]ntry without the intent to establish permanent residence. The alien must satisfy the inspecting immigration officer that the proposed stay is temporary. A temporary

4

> period has a reasonable, finite end that does not equate to permanent residence. In order to establish that the alien's entry will be temporary, the alien must demonstrate to the satisfaction of the inspecting immigration officer that his or her work assignment in the United States will end at a predictable time and that he or she will depart upon completion of the assignment.

8 C.F.R. § 214.6(b). Nevertheless, a TN- or TD-visa holder may receive unlimited extensions subject to certain conditions. 8 C.F.R. § 214.6(h)(iv), (j)(1).

¶14 Under these regulations, noncitizens intending to become United States residents may not obtain or renew a TN or TD visa. But the law does not preclude them from seeking an immigrant visa and permanent residency. For example, upon a successful petition from a United States citizen, a nonimmigrant may obtain an immigrant visa. *See* 8 U.S.C. §§ 1153(a), 1154(a)(1)(A)(i). The nonimmigrant and the petitioning citizen must have a specified type of relationship, such as siblings, which allows the nonimmigrant to seek "preference status." 8 U.S.C. § 1154(b); *see also* 8 U.S.C. § 1153(a)(4). Doing so involves the citizen filing a Petition for Alien Relative. 8 C.F.R. § 204.1(a)(1). This is the process Rendon's sister initiated on her behalf.

¶15 If the nonimmigrant obtains "preference status" and the corresponding visa, that noncitizen may seek an "adjustment of status" to legal permanent resident. *See* 8 U.S.C. § 1255(a). Obtaining that adjustment of status requires compliance with numerous conditions. *See, e.g.*, 8 U.S.C. 1255(c)-(f) (identifying noncitizens who are ineligible for adjustment of status). It is unclear whether Rendon can comply with them and obtain permanent residency.

### FEDERAL CASES CONCERNING DOMICILE AND IMMIGRATION STATUS

¶16 With this background, we turn to the federal case law addressing when noncitizens may be domiciled in the United States. The foundational United States Supreme Court case is *Elkins v. Moreno*, 435 U.S. 647 (1978), which concerned whether noncitizen-students were eligible for in-state tuition at the University of Maryland. The students had entered the United States on G-4 visas, which are available to employees of

5

international organizations and members of their immediate families. *Id.* at 652. The students' eligibility for in-state tuition turned in part on whether they could "form the intent necessary to allow them to become domiciliaries of Maryland." *Id.* at 658. However, the Court did not decide that issue. It instead certified that question to Maryland's highest court as a question of state law. *Id.* at 668-69.

¶17 Before doing so, though, the Supreme Court determined that federal law did not preclude holders of G-4 visas from establishing a United States domicile. *Id.* at 666. The Court distinguished the G-4 visa from some others, explaining that "Congress did not require holders of G-4 visas to maintain a permanent residence abroad or to pledge to leave the United States at a date certain." *Id.* at 664. As for holders of visas premised on such a requirement, the Court suggested that they could not establish a United States domicile without seeking an adjustment of status. *Id.* at 665-66 ("It is also clear that Congress intended that, in the absence of an adjustment of status . . . nonimmigrants in restricted classes who sought to establish domicile would be deported."). The Court again recognized this limitation in a follow-up case to *Elkins*. *Toll*, 458 U.S. at 14 & n.20.

¶18 Two Ninth Circuit cases have applied *Elkins* in contexts relevant here. The first case, *Carlson v. Reed*, 249 F.3d 876 (9th Cir. 2001), also involved eligibility for in-state tuition. The student was a TD-visa holder. *Id.* at 877. A California statute precluded noncitizens from establishing residency—and, consequently, eligibility for in-state tuition— if precluded by federal law from "establishing domicile in the United States." *Id.* at 878 (quoting Cal. Educ. Code § 68062(h)). Applying federal law to that statute, the court concluded that the student could not establish California residency. It reasoned that *Elkins* was premised on a G-4-visa holder's ability to establish an intent to remain in the United States. *Id.* at 880. Of course, the TD-visa regulations prohibit noncitizens from being admitted with such an intent. *Id.* (citing 8 C.F.R. § 214.6(b)). The court thus observed that if the student intended to remain in California, she would "violate her TN/TD federal immigration status" and "[h]er continued presence in this country would be illegal." *Id.* Thus, under existing California case law, she would be an "undocumented alien[]" and could not qualify for in-state tuition. *Id.* at 880-81 (quoting *Regents of the Univ. of Cal. v. Superior Court*, 276 Cal. Rptr. 197, 200-01 (Ct. App. 1990)).

¶19 More recently, the Ninth Circuit decided *Park v. Barr*, 946 F.3d 1096 (9th Cir. 2020). *Park* concerned whether a district court had properly upheld USCIS's denial of a naturalization application. *Id.* at 1097. The applicant had married in Korea, overstayed a tourist visa in the United

States, divorced under Korean law, and remarried a United States citizen. *Id.* USCIS determined the divorce was invalid under California law, rendering the new marriage invalid. *Id.* Therefore, USCIS denied the naturalization application, which required the applicant to be lawfully married to a United States citizen. *Id.*

**¶20** The district court agreed with USCIS, but the Ninth Circuit reversed. *Id.* The court applied a California statute that precludes the state from recognizing foreign divorces where both parties were domiciled in California when divorce proceedings commenced. *Id.* (citing Cal. Fam. Code § 2091). USCIS had concluded that the Korean divorce was invalid in California because the applicant and her first husband were domiciled in California when the divorce decree was executed. *Id.* at 1097. The Ninth Circuit reasoned, however, that a California domicile would have violated the applicant's tourist visa. *Id.* at 1099. The court also rejected the argument that the visa requirements were irrelevant because the applicant had overstayed her visa. *Id.* Rather, applying *Elkins*, it concluded that Congress's intent was to preclude such visa holders from establishing domicile, absent an adjustment in status. *Id.*

### APPLICATION OF FEDERAL LAW TO THIS CASE

**¶21** Here, the trial court determined that it was required to apply *Park* and *Carlson* and concluded that federal law precluded a finding that Rendon is domiciled in Arizona. We view the issue differently. Preliminarily, although Arizona courts are bound by the United States Supreme Court's determinations on substantive federal issues, we are not so bound by decisions of the Ninth Circuit. *See Weatherford ex rel. Michael L. v. State*, 206 Ariz. 529, ¶¶ 8-9 (2003); *Skydive Ariz., Inc. v. Hogue*, 238 Ariz. 357, ¶ 29 (App. 2015) ("[D]ecisions of the Ninth Circuit, although persuasive, are not binding on Arizona courts."). Therefore, the trial court was not obligated to follow *Park* and *Carlson*.

**¶22** Regardless, this case differs from *Park* and *Carlson*. As to *Park*, the applicant there did not begin seeking legal status until after her Korean divorce was finalized. *Park*, 946 F.3d at 1097. She was simply present in California on an expired visa. *Id.* Here, by contrast, before she initiated divorce proceedings, Rendon began seeking an immigrant visa that could lead to permanent residency. This distinction matters under *Elkins*. That case recognized that noncitizens can seek an adjustment of status to permanent residency even if they were admitted on visas requiring them to maintain a permanent foreign residence. *Elkins*, 435 U.S. at 667.

¶23     *Carlson* can arguably be read to suggest that a noncitizen cannot establish domicile when overstaying a TD visa. But the student in *Carlson* did not begin seeking an immigrant visa or adjustment of status. *See Carlson*, 249 F.3d at 877-78. Nor did the court contemplate that possibility. And *Carlson*'s conclusion that undocumented aliens cannot qualify for in-state tuition in California applied a California statute unrelated to the issues here. *Id.* at 880-81.

¶24     Although *Park* and *Carlson* are not on point, we must still address whether the federal law governing TN and TD visas would preempt a conclusion that holders of such visas can be domiciled in Arizona as a matter of state law while seeking an immigrant visa or permanent residency. We conclude that it would not. Federal laws are presumed not to preempt state laws. *Conklin v. Medtronic, Inc.*, 245 Ariz. 501, ¶ 8 (2018). The relevant federal law looks to the visa holder's intent upon admission to the United States and renewal of the visa. *See, e.g.*, 8 U.S.C. § 1184(e)(1) (allowing noncitizens to be "admitted" under relevant regulations); 8 C.F.R. § 214.6(b) (defining "temporary entry" as lacking "intent to establish permanent residence"). Nothing in that law precludes visa holders from entering the United States without an intent to remain, then changing that intent and seeking an immigrant visa or permanent residency later, including through the adjustment-of-status process recognized in *Elkins*.

¶25     Pimienta also points to several other federal cases that, in his view, preempt us from concluding that holders of TN and TD visas may establish Arizona domicile. First is *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30 (1989). That case concluded that "domicile" under the Indian Child Welfare Act ("ICWA") is a matter of Congress's intent rather than state law. *Id.* at 43-47. But unlike ICWA, which imposes uniform national standards, laws governing domestic relations have "long been regarded as a virtually exclusive province of the States." *Sosna v. Iowa*, 419 U.S. 393, 404 (1975). Pimienta has pointed to no binding federal law concluding that Congress has created—or even has the power to create—a uniform regulatory scheme governing domicile in state-law divorce proceedings.

¶26     Pimienta also relies on two circuit court cases, *Melian v. I.N.S.*, 987 F.2d 1521 (11th Cir. 1993), and *Graham v. I.N.S.*, 998 F.2d 194 (3d Cir. 1993). Those cases address whether a noncitizen's time in the United States on a nonimmigrant visa could count toward the seven consecutive years of "lawful unrelinquished domicile" necessary under a now-repealed statute to qualify for discretionary relief from deportation. *Melian*, 987 F.2d at 1523 & n.2 (quoting now-repealed 8 U.S.C. § 1182(c)); *Graham*, 998 F.2d at 195

(same).  Both courts concluded it did not.  They reasoned that during that time, the petitioners could not have lawfully intended to remain.  *Melian*, 987 F.2d at 1525; *Graham*, 998 F.2d at 196.  We are unpersuaded that those cases are relevant, given that they construed the immigration-law term "lawful unrelinquished domicile" in a statute not at issue here.

¶27            We add one additional comment about a California case cited by both parties and discussed in *Park*.  That case, *In re Marriage of Dick*, 18 Cal. Rptr. 2d 743, 745-48 (Ct. App. 1993), concluded that a husband on "tourist status" in the United States could establish a California domicile for divorce purposes even though his status required him to maintain a foreign residence.  The court reasoned that the husband could have "the dual intention of remaining in this country indefinitely by whatever means including renewal of a visa and of returning to his or her home country if so compelled."  *Id.* at 747.  In *Park*, the Ninth Circuit concluded that *Dick* conflicted with federal law and thus read *Dick*'s holding "narrowly."  *Park*, 946 F.3d at 1100.  Rendon and Pimienta disagree about the implications of *Park* reaching this conclusion.  But we need not address the issue.  *Park* does not contemplate that, before divorce proceedings, a party would begin seeking an immigrant visa that could lead to an adjustment of status.

¶28            Given our analysis of the federal statutory and case law, we conclude that Arizona courts would not impede Congress's purposes and objectives by allowing holders of TN and TD visas to establish Arizona domicile where they have begun seeking an immigrant visa or adjustment of status.  Similarly, allowing these visa holders to establish an Arizona domicile after invoking these processes would not add to or take from the conditions lawfully imposed by Congress.  Congress contemplated that these visa holders might be able to establish a United States domicile by following these processes.  For an Arizona court to exercise jurisdiction of this dissolution proceeding would neither alter Rendon's immigration status nor limit the remedies available under federal immigration law.  Accordingly, we hold that federal law does not preempt Arizona from allowing Rendon to establish domicile under Arizona law.  Absent federal preemption, Arizona is free to make and apply its own laws.

¶29            Our holding is narrow.  We do not address whether federal law would preclude nonimmigrant-visa holders from establishing Arizona domicile when their visas require them to maintain a foreign residence and they have not attempted to adjust their status.  Nor do we address more generally whether federal law would preclude deportable noncitizens from establishing domicile.

¶30 Our holding also does not depend on whether a visa holder is successful at obtaining an immigrant visa or adjustment of status. Those determinations can be discretionary and dependent on the circumstances. *See, e.g.*, 8 U.S.C. §§ 1153(a) (imposing limits on number of family-sponsored visas issued annually), 1255(c)-(f) (imposing conditions for granting application for adjustment of status). In evaluating preemption, it is sufficient that Congress has made these processes available to holders of TN and TD visas, especially where a holder has actually invoked those processes. Domicile turns on the petitioner's intent, and those processes allow visa holders to lawfully intend to remain in the United States, even if they are not ultimately allowed to do so.

## RELATIONSHIP BETWEEN IMMIGRATION STATUS AND STATE-LAW DOMICILE

¶31 Having resolved the preemption issue, we return to state law and address how Rendon's immigration status factors into the domicile analysis under A.R.S. § 25-312. Domicile is generally a fact-specific analysis. *See Clark v. Clark*, 124 Ariz. 235, 237 (1979). The Arizona Supreme Court has also concluded that "[i]llegal entry into the country would not, under traditional criteria, bar a person from obtaining domicile within a state." *St. Joseph's Hosp. & Med. Ctr. v. Maricopa County*, 142 Ariz. 94, 99-100 (1984) (quoting *Plyler v. Doe*, 457 U.S. 202, 227 n.22 (1982)). Nor has the legislature made domicile contingent on lawful presence in the country, as Section 25-312 makes no reference to immigration status.

¶32 Applying this case law, and absent any federal preemption, we see no reason to treat immigration status differently from any other relevant fact. It is a factor the trial court may consider in resolving domicile. The same is true of statements a party made to obtain a visa, as well as any application for permanent residence. *See, e.g.*, *Sahu v. Sahu*, 306 So. 3d 59, 62 (Ala. Civ. App. 2020) (application for permanent residency may strengthen domicile argument even if party entered United States on nonimmigrant visa that required maintenance of foreign residence).

¶33 In its ruling, the trial court identified numerous factors that might relate to Rendon's domicile. Aside from facts relating to her immigration status and intent to establish permanent residency, the court noted the Mexican court's declination of jurisdiction and that the visa expiration was due to Pimienta's refusal to renew his sponsorship. The court did not weigh those factors, however, because it ruled that it was preempted from finding domicile. Because we vacate that ruling, we remand for the trial court to weigh those factors. *See Hurd v. Hurd*, 223 Ariz.

48, ¶ 16 (App. 2009) ("Our duty on review does not include re-weighing conflicting evidence . . . .").

## ATTORNEY FEES AND COSTS ON APPEAL

**¶34** Rendon requests an award of attorney fees on appeal under Rule 21, Ariz. R. Civ. App. P. Because she has not cited a substantive basis for such an award, we do not consider her request. Nevertheless, as the prevailing party on appeal, Rendon is entitled to her costs upon compliance with Rule 21(b).

## DISPOSITION

**¶35** We vacate the trial court's dismissal for lack of subject matter jurisdiction. We remand the matter to that court to determine whether Rendon satisfies the domicile requirement of A.R.S. § 25-312.